# EYSSELL et al., Appellants, v. CITY OF ST. LOUIS.

168   607
175   ¹ 66
175   ¹ 67

## Division One, May 21, 1902.

1. **Opening Streets:** TAXBILLS: JUDGMENTS: LIMITATIONS. Proceedings in the circuit court in condemnation cases by municipalities for opening, widening and establishing streets, etc., are judgments of the circuit court. Such a judgment is not such a liability as is barred by limitation in five years, but the lien thereof expires in three years. The judgment itself, however, is not barred until after the expiration of ten years, and may be kept alive forever by successive *scire facias* proceedings every ten years, just as any other judgment.

2. ———: ———: ———: EFFECT OF CHARTER PROVISIONS. The fact that before final judgment, the city is given the power in condemnation cases, to withdraw the proceeding, and is prohibited from instituting another similar one within ten years except upon the petition of the owners of three-fourths of the property fronting the line of the proposed improvement or upon the payment by the city of the entire damages, and the fact that if the municipal assembly fail to appropriate the money to pay the damages allowed for the property taken at the same session at which the comptroller furnishes it with a copy of the judgment, operates, *ipso facto*, as a dismissal of the proceedings, does not, in any way, change the nature or character or effect of the action of the court upon the commissioner's report, or render its order making the benefit a lien on the property any the less a judgment. Such judgment, like any other, settles all controversy between the parties, as to liability, and the extent and nature thereof, and all other questions except the validity and regularity of the proceeding and the payment and satisfaction thereof.

3. ———: JUDGMENT: EFFECT OF TAXBILLS. The force and effect of a judgment order of the court making the assessed benefits a lien on the property, is not impaired by the requirements of the ordinances which provide that the comptroller shall issue special taxbills thereon, which he shall deliver to the collector, who shall notify the owners of the property affected to pay the same within sixty days, etc., and if not so paid suit thereon shall be brought.

4. **Ruling in Appellant's Behalf.** Where appellant was benefited and not damaged by the judgment on one count of the petition, he can not complain on appeal that a demurrer thereto was sustained, and if the other party does not complain, the judgment will not be reversed, although the ruling should have been otherwise.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED.

*Sigmund Labsap* for appellants.

(1) A special taxbill for the opening of a street is a lien on the property charged. Art. 6, sec. 5, of the Scheme and Charter of the City of St. Louis, R. S. 1899. An action on a special taxbill is barred by the five years' limitation. St. Louis v. Newman, 45 Mo. 138; Turner v. Burns, 42 Mo. App. 94. (2) Such taxbill, although barred, is an apparent lien and a cloud upon the title, against which a court of equity will grant relief, there being no adequate remedy at law. Pomeroy, Equity Jurisprudence (2 Ed.), sec. 1345; Bispham's Principles of Equity (5 Ed.), sec. 575; Gardner v. Terry, 99 Mo. 523; Field v. W. Orange, 39 N. J. Eq. 60; Loring v. Hildreth, 170 Mass. 331; Field v. Inhabitants of West Orange, 37 N. J. Eq. 434. (3) An owner of land may institute an action against any person seeking or claiming any interest in such property, to ascertain and determine the interest of said party in such real property, and to define and adjudge the interest of the parties severally in and to such real property. Sec. 650, R. S. 1899.

*Chas. W. Bates* and *Carl Ungar* for respondent.

(1) Generally the test by which to determine the existence of a cloud upon the title is, whether in ejectment by the grantee in the deed upon which the adverse title rests, the

Eyssell v. City of St. Louis.

owner in possession would be required to offer evidence to defeat a recovery. If such evidence would be necessary, a cloud exists. Bispham Prin. of Equity (6 Ed.), sec. 575; Sloan v. Sloan, 25 Fla. 53. This jurisdiction, however, will not be exercised unless some equity is apparent, or a cloud would otherwise exist against the title of the complainant. If no such equity is shown, or no such injury is likely to ensue, the relief will be refused. Eckman v. Eckman, 55 Pa. 269; Haine's Appeal, 73 Ib. 169; Orton v. Smith, 18 How. 263; Munson v. Munson, 28 Conn. 582; Gamble v. Loop, 14 Wis. 465; Moore v. Cord, Ib. 213; Farnham v. Campbell, 34 N. Y. 480; Wells v. Buffalo, 80 Ib. 253; Lehman v. Roberts, 86 Ib. 232; King v. Townshend, 141 N. Y. 358; Browning v. Lavender, 104 N. C. 69. (2) Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property. Sec. 650, R. S. 1899. Bills *quia timet* answer to the *brevia anticipantia* of common law. A bill *quia timet* is an equitable remedy insuring rights. Bispham Principles of Equity, sec. 568.

MARSHALL, J.—This is a bill in equity to cancel an assessment of two hundred and fifty dollars, special benefits charged against the plaintiff's lot in city block 3909, fronting one hundred feet on Maryland avenue, caused to accrue by reason of the opening of Newstead avenue from Olive street to McPherson avenue, under ordinance No. 15670. There

Vol 168 mo—39.

is no defect, irregularity or infirmity suggested in the proceedings under which the special benefit was charged on the property. The sole ground alleged in the petition for the relief sought is that the matter is barred by limitation, under section 6775, Revised Statutes 1889. The petition also contains a second count, which is similar in nearly all respects to the first count, but which contains the averment "that this action is instituted to ascertain and determine the estate, title and interest of the plaintiffs and the defendant, respectively, in said real estate," and the prayer of which is that the court adjudge the interest of the parties, and decree a fee simple title to the plaintiffs, free from any lien or interest of the defendant. The defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The circuit court sustained the demurrer. The plaintiffs refused to plead further. Judgment was entered for defendant, and the plaintiffs appealed.

## I.

The sole allegation of the plaintiff's petition is, that the special benefits assessed against the plaintiff's property constitute simply a special taxbill and that it is barred by limitation, under section 6775, Revised Statutes 1889. The case was tried by the plaintiff upon this theory alone, in the lower court. Upon the oral argument in this court it was suggested that the special benefits were not simply in the shape of a special taxbill but that they were in form and effect a judgment of the circuit court, and that judgments were expressly excepted by the terms of section 6775, Revised Statutes 1889, and that judgments are not barred until the expiration of ten years, and may be kept alive forever if revived within successive periods of ten years. [Sec. 6013, R. S. 1889.] In avoidance of this suggestion the plaintiffs now contend that the special benefits, if a judgment, constitute only a lien on the land,

and that under section 6012, Revised Statutes 1889 (sec. 3714, R. S. 1899), the lien of a judgment continues only three years, and that this lien was over three years old when this suit was begun.

These considerations necessitate a review of the law under which in the city of St. Louis a special benefit may be charged upon the property of a citizen for the opening of a street.

Section 2 of article 6 of the charter of St. Louis provides that the assembly, upon the unanimous recommendation of the board of public improvements or upon the petition of the owners of the major portion of the ground fronting thereon, may pass an ordinance for the opening of a street, etc., and that thereupon the city counselor, in the name of the city, shall apply to the circuit court, "by petition setting forth the general nature of the improvement proposed to be made, the names of the owners of the several lots or parcels of land, if known, or if unknown a correct description of the parcels whose owners are unknown, and praying the appointment of three disinterested commissioners, freeholders of property in said city, to assess the damages which said owners may severally sustain by reason of the appropriation and condemnation of such real estate by the city, for any of the purposes aforesaid, to which petition the owners of all such lots or parcels of land embraced in the proposed improvement shall be made parties defendant by name, if the names are known, and by description of land of unknown owners."

Section 3 of article 6 of that charter provides that upon the filing of such a petition a summons shall be issued, giving the defendants ten days' notice of the time when the petition will be heard, and provides that the city marshal shall serve the summons "in the same manner as writs of summons are or may be by law required to be served," and also provides for a notice by publication for four weeks to all unknown and nonresident owners.

Section 4 of article 6 provides that upon being satisfied

that due notice has been given, the court, or judge in vacation, shall appoint three disinterested commissioners, freeholders in said city and residents thereof for five years next before their appointment, "to assess the damages which the owners of the land may severally sustain by reason of such appropriation."

Section 5 of article 6 provides: "It shall be the duty of the commissioners to ascertain the actual value of the land and premises proposed to be taken, without reference to the projected improvement and the actual damages done to the property thereby, and for the payment of such values and damages to assess against the city the amount of benefit to the public generally, and the balance against the owner or owners of all property which shall be especially benefited by the proposed improvement in the opinion of the commissioners, to the amount that each lot of said owner shall be benefited by the improvements. The sums to be paid by the owners of property especially benefited by the improvement, as ascertained by the commissioners, shall be a lien on the property so charged, and shall be collected as provided by ordinance, and when collected shall be paid into the city treasury as a separate fund to be used exclusively for the payment of the damages awarded," etc.

Section 6 of article 6 requires the commissioners to view the property, assess the value and damages and benefits and make their report under oath, assessing separately "the damages allowed to each owner, and the benefits assessed against each individual."

Section 7 of article 6 provides: "The report of said commissioners may be reviewed by the circuit court on written exceptions filed by either party in the clerk's office, within ten days after the filing of such report, and the court shall make such order therein as right and justice may require, and may order a new appraisement upon good cause shown; but the hearing of such exceptions shall be summary, and the court

shall fix a day therefor without delay, upon the filing of any such exceptions, or within ten days after the expiration of the time given said city to report the same to the assembly as hereinafter provided."

Section 8 of article 6 provides that the city shall pay the costs of the proceeding up to the filing of the exceptions, and any subsequent costs shall be paid by the losing party.

Section 9 of article 6 provides that upon the filing of the commissioners' report the court shall give the city, upon application of the city counselor, reasonable time to report the result of the same to the municipal assembly for its information and approval, during which time no action shall be taken by the court upon the report; and further gives the city the right to dismiss and withdraw the proceedings on payment of the costs, at any time before the final confirmation of the report, but if it does so dismiss the proceedings prohibits the city to institute any further condemnation suit for the same purpose within ten years, unless upon petition of the owners of three-quarters of the property fronting the improvement, or upon payment by the city of the entire damages assessed for the taking of the private property for public use.

Section 10 of article 6 provides: "When the report of the commissioners shall have been approved, or final action taken thereon by the court, the clerk of the circuit court shall make a certified copy of the report, and the final action of the court thereon, and deliver the same to the city comptroller, who shall forthwith record the same in a book to be provided for that purpose. It shall be the duty of the comptroller, as soon as the same is recorded, to furnish a copy thereof to the assembly, and the assembly shall, at its first session thereafter, make an appropriation for the payment, out of the city treasury, of all the damages assessed in favor of the owners of property appropriated, and the city treasurer shall cause the same to be paid to the parties entitled thereto, respectively, or into court for their use, as provided by ordinance. Any

failure of the assembly, within the time above stated, to make such appropriation, shall operate as a dismissal of such proceedings, and no future action for such condemnation shall be commenced for a period of ten years, except as hereinbefore provided in case of a dismissal by the city."

To these proceedings prescribed by charter, the ordinances of St. Louis have added the following supplementary proceedings: the street commissioner is required to furnish the city counselor with all necessary plats, showing the property affected by the proposed improvement, and the metes and bounds and the names of the owners thereof. [Sec. 875, Rev. Ord. St. Louis 1901]. The commissioners are required to assess the damages for the property taken, and to assess against the city the benefits to the public generally, "and the balance against all property within a district to be ascertained, defined, laid down and established by the commissioners, as the district of property benefited by the proposed improvement," and providing that before any such benefits shall be assessed against any property in the benefit district so established by the commissioners, "the city counselor shall give five days' notice in the papers doing the city printing, of the establishment of said district and the boundaries thereof, and of the time and place, when and where the commissioners will proceed to assess said benefits, and inviting all persons interested to be present; and at said hearing all parties owning or interested in property in said district shall have the right to be heard, and may except to the report of the commissioners before the circuit court when it is filed." It is further provided that, "The sums assessed as benefits against property within the district aforesaid shall be a lien on the property so charged, and shall be collected, if not paid as hereinafter provided, by suits in the circuit court of the city of St. Louis, in the name of the city of St. Louis, and when collected shall be paid into the city treasury as a special fund to be used exclusively for the payment of the damages awarded," etc. [Sec. 876, Rev. Ord. St.

Louis 1901]. After final action of the circuit court on the report of the commissioners, and after receiving the certified copy of the report, and the action of the court thereon and after the municipal assembly has made the appropriation to pay the damages, it is made the duty of the comptroller "to make out certificates of awards, in accordance with the report of the commissioners for the damages awarded, and he shall also issue special taxbills in accordance with said report against all parties and pieces and parcels of property charged with benefits, in which shall be included costs pro rata, if any have been accrued since said report was filed." [Sec. 877, Rev. Ord. St. Louis 1901]. It is then provided that the comptroller shall deliver "said special taxbills" to the collector, who shall give ten days' notice by publication, notifying all parties by name, that the special taxbills are in his hands for collection and will so remain for sixty days, during which time they may be paid without interest, and if not paid during said time they will bear six per cent interest and be enforced by legal proceedings. [Sec. 878, Rev. Ord. St. Louis 1901]. Then it is provided that at the expiration of the sixty days the collector shall return all unpaid bills to the comptroller, who shall immediately deliver them to the city counselor, "who shall thereupon proceed to collect the same by suits instituted in the name of the city for that purpose." [Sec. 879, Rev. Ord. St. Louis 1901].

These charter and ordinance provisions have been considered and construed by this court and the action of the circuit court in such condemnation cases has been treated as a judgment by this court, and not simply as furnishing the foundation for a special taxbill to be issued by the comptroller. Thus, in St. Louis v. Thomas, 100 Mo. 223, it was treated as a judgment so that an appeal would lie therefrom under the code relating to appeals from judgments of the circuit court notwithstanding no provision for an appeal is contained in the charter.

In St. Louis v. Ranken, 95 Mo. 189, the question of whether property was benefited by the widening of a street was treated as an open one when the owner was sued on the special taxbill. But this view was held to be erroneous and this case overruled in St. Louis v. Ranken, 96 Mo. 497, and it was there held, after an exhaustive review of these charter and ordinance provisions, that the action of the court in the original condemnation case, assessing the damages and benefits, was conclusive and not open to review in a suit on such special taxbill, and that the only question open to review in such a suit was the regularity of the proceedings had in the original condemnation case. The opinion of BRACE, J., in this case has been accepted, recognized and followed ever since. [Michael v. St. Louis, 112 Mo. 610; Buddecke v. Ziegenhein, 122 Mo. 239.]

And the fact that the owner of property charged with special benefits receives notice only by publication does not militate against the validity of the assessment or the character of the order assessing the benefits. [Ibid., and, under analogous provisions of the charter of Kansas City, see, Kansas City v. Ward, 134 Mo. 172, and Kansas City v. Duncan, 135 Mo. 571.]

Thus, it will appear that such proceedings in the circuit court in condemnation cases by municipalities for opening, widening, establishing streets, etc., have been treated by this court as judgments of the circuit court. The fact that before final judgment the city is given the power to withdraw the proceeding and is prohibited from instituting another similar proceeding within ten years except upon the petition of the owners of three-fourths of the property fronting on the line of the proposed improvement or upon the payment by the city of the entire damages, and the fact that if the municipal assembly fails to appropriate the money to pay the damages allowed for the property taken at the same session at which the comptroller furnishes it with a copy of the judgment,

operates *ipso facto*, as a dismissal of the proceedings, does not, in any way, change the nature or character or effect of the action of the court upon the commissioner's report.

The object in view in giving the city the right to dismiss the proceeding after the commissioner's report is filed, and of requiring the court to allow the city counselor time to report to the municipal assembly, what the commissioner's report is, and of prohibiting the court from taking any action during that time, is to enable the public authorities to ascertain at what cost the public improvement contemplated can be put through, and if the cost is too great to be met out of available revenue, to permit the public to abandon the proceeding, and as a result the city can not again tie up the property of the citizen by a similar proceeding except on the terms pointed out.

And the object in view in making the failure to appropriate the money to pay the damages at the same session of the municipal assembly at which it receives from the comptroller a copy of the judgment, operate as a dismissal of the proceedings, is to give the public another opportunity to say whether they will proceed with the public improvement, upon the terms fixed by the judgment of the court, after reviewing the report of the commissioners and making such order as right and justice may require, and if the public elect then to proceed, to require the prompt payment of the damages to the owner of the property taken or damaged.

None of these considerations make the order of the circuit court any the less a judgment, nor are any of these steps taken or allowed out of any regard for the owners of the property assessed with special benefits. They are provisions of law intended solely for the benefit and protection of the public at large operating through the municipal agencies. The judgment of the circuit court is none the less a final determination of the controversy, especially as to the damages to be paid by the city in the first place to the owners of the prop-

erty taken, and as to the special benefits to be paid by the owners of the property specially benefited by the public improvement, because by failing to make the appropriation the municipal assembly, after such final judgment, may produce a dismissal of the proceeding. The utmost that could be said of this feature of the law is that it makes the final judgment of a court subject to nullification by the action of the municipal assembly of the city, speaking, however, in this respect as the agents of the public at large, and that such a method of undoing a final judgment of a court is unusual, but not beyond the power of the people to so arrange it.

But it is not necessary to go even this far to treat the action of the circuit court as a judgment.

The law requires a petition to be filed in court asking for the condemnation of private property for public use; requires the owners of all property affected by the proposed improvement to be made parties defendant by name, or if the owners be unknown the land to be described; requires a summons to issue and be served like a summons in an ordinary suit, personally, if possible, by publication for four weeks, if personal service can not be had; requires the commissioners to view the property and lay out a benefit district within which private property may be assessed with special benefits for the public improvement; requires the city counselor to notify by publication the owners of all property in the benefit district of the pendency of such condemnation proceeding and when and where the commissioners will meet to hear what they have to say concerning the assessment of special benefits and of the further fact that they may also be heard in court upon the report of the commissioners; requires a sworn report of the commissioners fixing the damages and assessing the benefits; permits exceptions to be filed to the report by any person interested and gives the court power to review the report, "and make such order therein as right and justice may require."

All of this sounds very much to the trained legal mind

like the institution and prosecution of a suit and the rendering of a judgment by the court. It would be a poor compliment to pay the distinguished framers of the St. Louis charter, to hold that these detailed and carefully guarded steps they provided should be taken in a condemnation case, were not sufficient to constitute a judgment, but were to be taken so solemnly and within the portals of a court of justice simply and solely to furnish the basis upon which the comptroller should issue special taxbills. Moreover, the comptroller computes nothing, decides nothing, does not act judicially nor in a quasi-judicial character in such cases. He simply enters on a book he is required to keep, the judgment of the circuit court, and then issues "certificates of awards" to persons whose property has been taken or damaged, and "special taxbills" against the property assessed with special benefits. In both and in all respects the comptroller acts ministerially. The certificates of awards of damages issued by the comptroller might as well be said to be the assessment by the comptroller of the damages suffered, as the issuing of the special taxbills for the benefits could be said to be an assessment of the benefits by the comptroller, or that all of these solemn steps and proceedings had culminated only in a taxbill, that must be sued on in court and reduced to judgment before it could be enforced.

The fact is that the charter provides that the order of the court assessing the benefits shall be a lien on the property and shall be collected as provided by ordinance. It does not contemplate any special taxbill at all or any subsequent suit. The order so made is a judgment, and can only be resisted upon the same grounds that any other kind of a judgment can be defended against. [St. Louis v. Ranken, 96 Mo. 497.] Such being its character under the charter, its force and effect is not impaired by the requirements of the ordinances which provide that the comptroller shall issue special taxbills thereon, which he shall deliver to the collector, who shall notify the owners of the property affected to pay the same in sixty days,

and if not so paid the collector shall return them to the comptroller and he shall deliver them to the city counselor who shall bring suit thereon in the circuit court. Such steps are solely in the interest and for the benefit of those whose property is assessed with special benefits. And when the suit so provided for by the ordinance is prosecuted, it is in contemplation of law a suit upon the judgment in the condemnation case, and not a suit upon a special taxbill, notwithstanding it is so spoken of in the ordinance. Such a suit is in legal effect a *scire facias* issued against the persons whose property has been already adjudged liable for the special benefits, to show cause why they have not paid that judgment. And as already shown herein when such persons come into court they can only show against such a judgment as much, and no more, as they could show against any other kind of a judgment of the circuit court. That judgment had settled all the controversy between the parties, as to liability, extent and nature of liability, in fact every kind and character of question, except the validity and regularity of the proceeding and the question of the payment and satisfaction of the judgment.

Such being the nature and character of the judgment in such cases, it follows that while the special benefit is a liability created by law, it is not such a liability as is barred by limitation in five years, under section 6775, Revised Statutes 1889 (sec. 4273, R. S. 1899), because it is a judgment, which while a liability created by law, is nevertheless expressly excepted by that section. And being a judgment of the circuit court, the lien thereof expires in three years, under section 6012, Revised Statutes 1889 (sec. 3714, R. S. 1899) but the judgment itself is not barred until after the expiration of ten years, and it may be kept alive forever by successive *scire facias* proceedings, every period of ten years under section 6013, Revised Statutes 1889 (sec. 3715, R. S. 1899).

In this case the judgment assessing the benefits was rendered January 26, 1892, and the amended petition in this

case was filed October 27, 1899. It does not appear when this suit was commenced. The cases of St. Louis v. Newman, 45. Mo. 138, and Turner v. Burns, 42 Mo. App. 94, are very different from the case at bar. The special taxbills in those cases were strictly special taxbills for street improvements, and were issued according to the direction of the ordinance ordering the work or the law applicable to such cases, by an officer of the city. They were not the result of a proceeding in court at all, as was the special benefit in this case.

The conclusion follows that the demurrer was properly sustained as to the first count of the petition. As to the second count, under section 650, Revised Statutes 1899, the plaintiff was entitled to the judgment of the court ascertaining and determining the right, title, interest and estate of each of the parties in and to the land. Under the allegations of the petition such an ascertainment could only have resulted in a judgment that the plaintiff owned the fee, and that the defendant had a judgment against the land for two hundred and fifty dollars special benefits conferred upon it by the opening of Newstead avenue. Inasmuch as the city did not insist upon a decree so defining the rights of the parties, the plaintiff is not injured, but rather benefited by the court failing so to declare. For if the court had so declared that would have created a lien for three years, and would have revived the judgment for ten years more. As it is, if the city has not revived the original judgment of January 26, 1892, that judgment is now barred. It therefore results that the plaintiff was benefited and not damaged by the judgment on the second count, and, hence, he can not complain, and the other party does not complain.

For these reasons the judgment of the circuit court is affirmed. All concur.