## CITY OF ST. LOUIS v. LOUIS BRINCKWIRTH et al., Appellants.

### Division One, May 29, 1907.

1. **BENEFIT ASSESSMENTS: Taxbills: Failure to Introduce in Evidence.** Where it is necessary to plead that taxbills, in a condemnation proceeding for the opening and construction of an alley, were issued, it is necessary to prove they were issued; and if there is no proof that they were issued, the judgment assessing the amount thereof against the defendant's property cannot stand. And where the petition states all the steps taken by the city up to and including the issuance of the taxbills, their delivery to the collector, the notice given by the collector to property-owners to pay them, their failure to pay, and states that certified copies of said taxbills, as charged in the petition, are filed therewith, as the instruments sued on, a failure to introduce the taxbills in evidence, the answer being a general denial, necessarily will result in a reversal of the judgment for the city.

2. ———: ———: **Condemnation: Confirmation of Commissioner's Report: Scope.** The judgment of confirmation of the commissioner's report, in a condemnation proceeding to appropriate private property to a public use, is as to the damages suffered and awarded a final judgment of a court that can be enforced, and it is likewise a final judgment as to the amount of the special benefits to be paid by the property-owners in the benefit district specially benefited by the public improvement; but

such confirmation is not, as to the benefits, a judgment which of itself can be enforced against the property benefited, or upon which a *scire facias* can issue. [Distinguishing and in part overruling Eyssell v. St. Louis, 168 Mo. 607.]

3. ———: ———: ———: ———: ———: **Judgment of Confirmation as Evidence.** The charter providing that, after the commissioner's report assessing the damages and apportioning the benefits has been confirmed by the circuit court, the sums to be paid by the property-owners "shall be collected as provided by ordinance," and the ordinance requiring taxbills to be thereafter made and these taxbills to be collected by suits thereon, the judgment of confirmation was not a sufficient basis for a judgment against the property-owner for the amount of the taxbills, and the taxbills not being offered in evidence, the judgment cannot stand.

4. ———: **Not Parties to Condemnation.** The fact that defendant property-owners were not named in the petition or otherwise made parties to the condemnation proceeding for establishing the alley, is no defense in a suit to compel them to pay the benefits assessed against their property abutting against the alley, no part of it having been taken for the alley.

5. ———: **Validity: Two Alleys: Notice.** Where there were two alleys to be established by the condemnation proceeding and provided for by the ordinance, one running north and south and the other east and west, in one of which defendants, who were not served with notice or summons in the condemnation branch of the case, had no interest, and the published notice to property-owners said "in the matter of opening an alley in city block 3788 under ordinance No. 17721," the notice was wholly insufficient, and the tax-assessing branch of the case was void.

6. ———: ———: **Burden: Prima Facie Evidence.** The validity of the assessment and levy can be drawn in question, as a defense, in a suit for the amount of the benefit assessed. When that validity is at issue, it devolves upon plaintiff to show a compliance with the law. The taxbill is not prima-facie evidence of that fact.

7. ———: ———: **Notice: Report of Commissioners.** The finding of commissioners that due notice had been given is not such a finding and judgment, even though confirmed by the circuit court, as cannot be disputed when the property-owner, who was not named in the petition or summons, is sued for the amount of the assessment. That is not a judgment. It is simply the record of the acts of a governmental agency in the course of assessing a special tax. It can, therefore, be attacked collaterally.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED.

*Kehr & Tittmann* for appellants.

(1)   It was admitted that the defendants Brinckwirth and Nolker were not named as parties to the case of City v. Hamilton et al.; that they were not served personally or by copy or by ordinary order of publication, and that the only jurisdiction of the court in that case over said defendants or their property was obtained by the city counsellor's notice, dated December 13, 1895. If that notice is invalid, as against them, then the assessment against their property is null and void. City v. Ranken, 96 Mo. 507; Michael v. City, 112 Mo. 614; City v. Koch, 169 Mo. 591; Leslie v. City, 47 Mo. 478; Railroad v. Young, 96 Mo. 42; Williams v. Kirby, 169 Mo. 628.   (2)   The city counsellor's notice of December 13, 1895, is not in compliance with the city charter and municipal ordinances, and is null and void as against these defendants. 2 Lewis on Em. Domain (2 Ed.), sec. 367; 15 Encyclopedia of Law, p. 846; City v. Koch, 169 Mo. 591; In re Central Park, 51 Barb. 277; State v. City of Elizabeth, 32 N. J. L. 357; Quackinbusch v. District of Columbia, 20 D. C. 308; Williams v. Kirby, 169 Mo. 622; Peterson v. Baha, 161 Mo. 520; Winningham v. Trueblood, 149 Mo. 572; Stewart v. Allison, 150 Mo. 344; Ozark Land & Lumber Co. v. Lasley, 88 Mo. App. 370; Simmons v. Sardiner, 6 R. I. 255.   (3)   The judgment rendered by the circuit court, upon the filing of the report of the commissioners in the case of City v. Hamilton, does not affect defendants or their property. It establishes no lien against their property. It is wholly void as against them. Hence, it forms no basis on which special taxbills could be issued against defendants' property, or on which a scire facias could be issued against defendants to show

cause why they have not paid the judgment or upon which to base a bill in equity to enforce a supposed lien. Catesche v. Circuit Court, 1 Mo. 608; Bourgeous v. Schrage, 69 Wis. 316; Bennett v. Hall, 184 Mo. 407; State ex rel. v. Klein, 140 Mo. 510; Vaughan v. Daniels, 98 Mo. 234; State v. French, 118 Mo. 15; Gage v. People, 207 Ill. 61; Adams v. San Angelo Water Works Co., 25 S. W. 165; Hurt v. Moore, 19 Tex. 269; Gayle v. Singleton, 1 Stew. (Ala.) 566; Ross v. Adams, 13 Bush (Ky.) 371; Lawless v. Barger, 9 Bush (Ky.) 665; Carter v. Elmore, 119 N. C. 296. (4) Moreover, the records in the case of City v. Hamilton, introduced in evidence by plaintiff, do not show that defendants were notified in the manner provided by the ordinance, or that they voluntarily appeared. Hence, the assessment against their property is void. Michael v. St. Louis, 112 Mo. 614; Taylor v. Todd, 48 Mo. App. 550; Railroad v. Young, 96 Mo. 42; Williams v. Kirby, 169 Mo. 628; City v. Koch, 169 Mo. 591. (5) The petition against defendants is based upon two special taxbills. The taxbills were not offered in evidence. Hence, plaintiff made out no case for recovery.

*Charles W. Bates* and *C. R. Skinker* for respondent.

(1) The record entry confirming the commissioners' report in City v. Hamilton is a final judgment. Sec. 10, art. 6, St. Louis Charter; St. Louis v. Thomas, 100 Mo. 223; Eyssell v. St. Louis, 168 Mo. 616; St. Louis v. Annex Realty Co., 175 Mo. 67. (a) It is a judgment. Eppright v. Kauffmann, 90 Mo. 25; Moody v. Deutsch, 85 Mo. 244; Lingo v. Burford, 112 Mo. 149. (b) It is final. State ex rel. v. Klein, 140 Mo. 510; section 8, art. 6, charter. (2) The sufficiency of the notice upon which the assessments sought to be collected by this suit are based, is not now open to examination, because that question was finally determined in City v. Hamilton. Paulsen v. Portland, 149 U. S. 40;

Lingo v. Burford, 112 Mo. 149; State ex rel. v. Branch, 134 Mo. 592; Short v. Taylor, 149 Mo. 517; Piper v. Boonville, 32 Mo. App. 138; Wilson v. Lubke, 176 Mo. 216; Whitaker v. Bramson, Fed. Cas. 17526; Hilton v. Jones, 159 U. S. 589; Foltz v. Railroad, 60 Fed. 316; Gunter v. Coast Line, 200 U. S. 290; Waples, Proceedings in Rem, sec. 71; Wright v. Marsh, 2 G. Greene 109; Kane v. McCown, 55 Mo. 199; People v. Rochester, 21 Barb. 666; Tibbitts v. Railroad, 54 Ill. App. 180; Kirchman v. Railroad, 58 Ill. App. 518; Railroad v. Cheetham, 58 Ill. App. 318. If not sufficient, appellants should have complained of the insufficiency in the former case, and are now barred thereof. Seafield v. Bohne, 169 Mo. 551; Leonard v. Sparks, 117 Mo. 103. (3) The notice, if re-examinable, is nevertheless sufficient. Such notice need only be appropriate to the nature of the case, less formal than in ordinary court proceedings, even in proceedings based upon the power of eminent domain. Davidson v. New Orleans, 96 U. S. 104; Hager v. Reclamation District, 111 U. S. 708; Railroad v. Pennsylvania, 134 U. S. 239; St. Louis v. Ranken, 96 Mo. 505. No notice is necessary to one whose land may be taxed for benefits for the opening of a street. Goodrich v. Detroit, 184 U. S. 427. In both special and general taxation the statute itself may convey the only notice requisite. Hodge v. Muscatine County, 196 U. S. 281; State Railroad Tax Cases, 92 U. S. 575; Kentucky Railroad Tax Cases, 115 U. S. 321; Bank v. Pennsylvania, 167 U. S. 467; Lander v. Bank, 186 U. S. 469; State ex rel. v. Cummings, 151 Mo. 57. The notice is in fact sufficient. Waples, Proceedings in Rem, sec. 71. (4) The phrase in the notice "an alley" sufficiently comprehends the purpose of ordinance 17721. St. Louis v. Lane, 110 Mo. 254. (5) In this case the city has two judgments to rely upon, (a) The separate assessments for benefits as set out in the commission-

St. Louis v. Brinckwirth.

ers' report, and (b) the judgment of the circuit court confirming the commissioners' report. 1. The several benefit assessments contained in the commissioners' report are of themselves judgments. Irrigation District v. Bradley, 164 U. S. 169; St. Louis v. Ranken, 96 Mo. 505; Railroad v. Jones, 29 Fed. 195; Plum v. Kansas City, 101 Mo. 531; Burke v. Kansas City, 118 Mo. 321; Plumer v. Boom Co., 49 Wis. 455; State v. Richmond, 26 N. H. 235; Stanley v. Supervisors, 121 U. S. 550; Palmer v. McMahon, 133 U. S. 669; Missouri ex rel. v. Gottlieb, 190 U. S. 427; State ex rel. v. Cummings, 151 Mo. 58; Eppright v. Kauffmann, 90 Mo. 27. 2. These judgments are separate and severable. St. Louis v. Lanigan, 97 Mo. 175; Kansas City v. Block, 175 Mo. 443. 3. Such judgments are *in rem.* Kansas City v. Duncan, 135 Mo. 583; Overby v. Gordon, 177 U. S. 220; Leigh v. Green, 193 U. S. 90; Boswell v. Otis, 9 How. 348; Freeman v. Alderson, 119 U. S. 185; Crane v. Elizabeth, 38 N. J. Eq. 343; United States v. Dunnington, 146 U. S. 352; Ballard v. Hunter, 204 U. S. 241; Beyer v. Trust Co., 63 Mo. App. 528; Jeter v. Hewett, 22 How. 364; Michaels v. Post, 21 Wall. 398; Pennoyer v. Neff, 95 U. S. 734; French v. Taylor, 33 Wash. 1; affirmed, 199 U. S. 274. 4. Such judgments fix the status of the land assessed as taxable and the amount of that tax. Woodruff v. Taylor, 20 Vt. 73; Street v. Insurance Co., 75 Am. Dec. 721; Lord v. Chadbourne, 42 Me. 443. 5. Such benefit assessments as ascertained by the commissioners become a lien upon the parcel against which assessed. Sec. 5, art. 6, charter. Such lien is inchoate until the report shall have been confirmed by the court, when the lien becomes fixed. Wilkinson v. District of Columbia, 22 D. C. A. 289.

GRAVES, J.—This is an action by the city of St. Louis against Louis Brinckwirth and William F. Nolker, upon two taxbills issued for assessed benefits

against two tracts of land owned by them in City Block No. 3788, in the city of St. Louis. The petition is in two counts. Answer, general denial. In the lower court plaintiff had judgment upon each count, and defendants appealed. After the cause reached this court, the defendant (appellant) William F. Nolker, died, and his death was suggested by his co-appellant, Brinck-wirth, and the cause proceeded as the suit of such surviving appellant, under the provisions of section 857, Revised Statutes 1899.

By ordinance No. 17721, approved July 24, 1894, the city of St. Louis directed and authorized the establishment and opening of two alleys in City Block No. 3788. This block is bounded on the west by Acadmy avenue, upon which it fronts 261 feet, on the north by Easton avenue, on which it fronts 966 feet; on the east by King's Highway boulevard, on which it fronts 277 feet; and on the south by Wells avenue, on which it fronts one thousand feet. One alley provided for by said ordinance No. 17721, was an alley 15 feet in width, running through said City Block 3788 from north to south, that is, from Easton avenue to Wells avenue, the east line of which alley commenced at a point 163 feet and one inch west of the west line of King's Highway boulevard, and ran north to a point on Easton avenue, one hundred feet west of the west line of King's Highway boulevard. The other alley provided for by this ordinance ran east and west through said block, about the middle thereof, beginning, however, at the west line of this north and south alley, first above described, and ending at Academy avenue, on the west of said city block. This alley was likewise fifteen feet in width. The property belonging to Brinckwirth and Nolker was on the east of this north and south alley and between it and King's Highway boulevard.

It appears that after the passage of Ordinance No.

17721, the city brought an action to condemn property and for the appointment of commissioners to assess damages and benefits. The taxbills in suit were for benefits charged to defendants' property in this proceeding.

To sustain the issues upon its part, the city, over the objections of defendants, offered in evidence the petition in case of City of St. Louis v. David G. Hamilton et al., in cause No. 98647 of the files of the circuit court of city of St. Louis. This petition after stating the corporate capacity of the plaintiff, and pleading Ordinance No. 17721, setting out the same *in haec verba*, concludes thus:

"That for the purpose of opening said alley, it is necessary to take and appropriate private property for public use.

"That the above-named defendants own and are in possession of the various parcels or lots of ground through which said alley will run, and which it is necessary to condemn and appropriate for public use for the puposes of said alley.

"Wherefore, plaintiff asks that summons issue as by law required against the defendants giving them ten days' notice of the time when the petition will be heard, that at such hearing the court will appoint three disinterested commissioners, freeholders of property in this city, to assess the damages which said owners may severally sustain by reason of the appropriation and condemnation by said city of said real estate for the purposes aforesaid; that plaintiff may have judgment for the condemnation of said property for the uses aforesaid, and that the court may make such other and further orders in the premises as right and justice require."

There were eighty-seven defendants named in this petition, but Brinckwirth and Nolker were not named as defendants in that proceeding.

Over the objections of defendants, the plaintiff introduced in evidence the report of commissioners in the Hamilton case, by which it appeared that benefits were charged against the property of defendants in the amounts named in the taxbills sued upon in this cause.

The city further offered and introduced in evidence sections 674 and 675 of the Municipal Code of the city of St. Louis of 1892, as follows:

"Section 674.   Whenever the municipal assembly shall provide by ordinance for establishing, opening, widening or altering any street, avenue, alley, wharf, market place or public square, or route for a sewer or water pipe, or to condemn private property for other or different public uses than those already specified in this section, and it is necessary to take private property for the same, the street commissioner shall furnish the city counsellor with all necessary plats showing the property affected by the proposed improvement, and the metes and bounds and the names of the owners thereof.

"Section 675.   It shall be the duty of the commissioners appointed in any street opening proceeding to ascertain the actual value of the land and premises proposed to be taken without reference to the projected improvement, and the actual damages done to the property thereby, and for the payment of such value and damages to assess against the city the amount of benefit to the public generally, and the balance against all property within a district to be ascertained, defined, laid down and established by the commissioners as the district of property benefited by the proposed improvements; and each lot in said district shall be assessed for the proportionate amount it is benefited, in the opinion of the commissioners, so that the aggregate amount assessed against the property in said district shall equal the amount of value and damages awarded for the property taken for the improvements less the

amount assessed against the city for the benefit arising to the public generally for the improvement. The sums assessed as benefits against property within the district aforesaid shall be a lien on the property so charged, and shall be collected, if not paid as hereinafter provided, by suits in the circuit court of the city of St. Louis, in the name of the city of St. Louis, and when collected shall be paid into the city treasury as a separate fund to be used exclusively for the payment of the damages awarded: Provided, however, that in the opening of an alley, the benefit shall be paid by the owners of property in said block abutting or adjoining said alley; and provided, further, that before the commissioners shall assess benefits against property in the district established, as aforesaid, the city counsellor shall give five days' notice in the papers doing the city printing, of the establishment of said district and the boundaries thereof, and of the time and place when and where the commissioners will proceed to assess said benefits, and inviting all persons interested to be present, and at said hearing all parties owning or interested in property in said district shall have the right to be heard and may except to the report of the commissioners before the circuit court when it is filed.''

The following notice was then introduced:

"*Law Department of the City of St. Louis,*
St. Louis, Dec. 13, 1895.
"To whom it may concern, take notice:
"The commissioners in the matter of opening an alley in City Block 3788 under Ordinance No. 17721 will meet at room 12, City Hall, on Dec. 20, 1895, at 1 p. m. for the purpose of assessing benefits occasioned by said opening, and all parties interested are invited to be present, when and where they have the right to be heard and may except to the commissioners' report before the circuit court when it is filed.

204 Sup—19

"The taxing district for said opening includes the property in City Block 3788.

"W. C. MARSHALL, City Counsellor."

It was admitted that this notice was duly and properly published but it was objected to by defendants, and exceptions duly saved.

Then plaintiff introduced the judgment in the Hamilton case, supra, as follows:

"Now at this day, it appearing to the court that more than ten days had elapsed since the filing of the report of the commissioners in this cause and that no exceptions thereto have been made, filed or taken, and that said report had been duly reported to the municipal assembly of the city of St. Louis, for its information and approval and that the same has been duly approved by said assembly and that said alley is for public use:

"It is therefore ordered and adjudged by the court that said report be and the same is in all things hereby approved, confirmed and held as firm and effectual forever. That the property described in said report which is embraced within the lines as established by Ordinance No. 17721 of said city of St. Louis be, upon the payment of damages awarded by said report, vested in the city of St. Louis, forever, for the purposes named in the petition in this cause, and that plaintiff pay costs of this proceeding and it is further ordered that the clerk of this court certify to the comptroller of the city of St. Louis a copy of the said report, together with the final action of the court thereon."

There was also introduced by the plaintiff the ordinance appropriating the money with which "to pay the damages assessed to private individuals for the opening of an alley in City Block No. 3788." Then followed the plat of City Block No. 3788, with which evidence the plaintiff closed, without introducing either

the taxbills sued upon or said ordinance No. 17721. All of which evidence was over the objections of defendants.

Defendants introduced said ordinance No. 17721, section 1 of which is as follows:

"Section 1. An alley running north and south in City Block number thirty-seven hundred eighty-eight, from Wells avenue to Easton avenue and between King's Highway boulevard and Academy avenue, is hereby established as a public highway, fifteen feet wide, the east line thereof to run in a straight line from a point in the north line of Wells avenue, situated one hundred and sixty-three feet and one inch west of the west line of King's Highway boulevard, to a point in the south line of Easton avenue, which point is situated one hundred feet west of said west line of King's Highway boulevard; there is also hereby established as a public highway, fifteen feet wide, an alley running east and west in said city block from the west line of the afore-described north-and-south alley to the east line of Academy avenue and between Wells avenue and Easton ave., the center line thereof to coincide with the dividing line between lots four to nineteen and lots twenty to thirty-six in said city block. In addition to two triangular pieces of ground, situated at the intersection of the west line of the herein described north-and-south alley with the north line and south line of the herein described east-and-west alley are hereby established as public highways, the two sides thereof to measure each ten feet on the west line of the north-and-south alley and ten feet on the north line and on the south line of the east-and-west alley, respectively."

At this point the following admissions were made:

"Mr. Tittmann (after asking for the summons and return in the case of City v. Hamilton and not finding it with the papers): Will you agree to let it be entered that these defendants, Mr. Brinckwirth and Mr. Nolker,

are not parties to the suit in the case of City v. Hamilton?

"Mr. Skinker: Not in that way. The city of St. Louis will admit that the defendants, Brinckwirth and Nolker, in this case, were not named as parties to the petition in the case of City v. Hamilton, and were not served personally or by copy, or by ordinary order of publication and that the only jurisdiction of the court in the case of City v. Hamilton over defendants, Brinckwirth and Nolker, or their property, was obtained by the notice published by the city counselor, heretofore offered in evidence.

"Mr. Tittmann: That is certainly satisfactory to me."

Defendants also introduced the following sections of the Municipal Code:

"Section 976. *Duties of Comptroller*: After final action is taken by the circuit court on the report of the commissioners in any street or alley opening proceeding and said report has been duly received and recorded by the comptroller in his office, and the assembly have made an appropriation for the payment out of the city treasury of the damages awarded, it shall be the duty of the comptroller to make out certificates of awards, in accordance with the reports of the commissioners for the damages awarded, and he shall also issue special taxbills in accordance with said report aganst all parties and pieces and parcels of property charged with benefits in which shall be included costs, pro rata, if any have accrued since said report was filed.

"Sec. 677. *Special Taxbills, How Collected*: Said special taxbills shall be delivered by the comptroller to the collector, who shall for ten days consecutively, by advertising in the newspapers doing the city printing, notify all parties interested by name, that said special taxbills are in his hands for collection and will remain there for the period of sixty days from the date of the

first insertion of said advertisement, during which time payment can be made at his office without interest or additional costs, and that all bills remaining unpaid at the end of said period shall bear interest at the rate of six per cent per annum, and will be enforced by legal proceedings.

"Sec. 678. *Suits to be begun, when*: Upon the expiration of the sixty days provided in the last section all bills unpaid shall be returned by the collector to the comptroller, and by the latter shall be delivered to the city counselor, who shall thereupon proceed to collect the same by suits instituted in the name of the city of St. Louis for that purpose."

The court refused an instruction in these words:

"Defendants pray the court to declare the law to be that under the pleadings and the evidence in this case, the judgment must be for the defendants."

And thereupon entered judgment for the plaintiff as above stated.

I. The failure to introduce the taxbills in evidence will of necessity work a reversal of this case. The condemnation proceeding in cases of this character is provided for in sections 2 to 11 of article VI of the St. Louis Scheme and Charter. Supplemental to these charter provisions we have sections 674 to 678 of the Municipal Code which we have set out in our statement of facts. By section 676, the city comptroller is required to issue special taxbills for benefits which have been assessed. By section 677, the comptroller is required to deliver these taxbills to the collector, who shall give notice for ten consecutive days in the newspapers doing the city printing, that said taxbills are in his hands for collection and will remain there for sixty days from the date of the first insertion of the notice, during which time they can be paid without interest, but after such period they shall bear six per cent interest. By section 678, at the expiration of the

sixty days mentioned in the previous section the unpaid taxbills are required to be returned by the collector to the comptroller, and by him delivered to the city counselor, who shall thereupon proceed to collect the same by suit.

Plaintiff in this court disclaims the idea that the suit is one on the two taxbills, but a casual reading of the petition will suffice. The petition states all the steps taken up to and including the issuance of the taxbills, as well as the delivery of said taxbills to the collector, the notice of the collector, the failure of payment, and with said petition as stated therein, are filed certified copies of such taxbills as the instrument sued upon. Then follows the prayer in this language:

"Plaintiff prays that a decree be entered herein establishing the amount of said special taxbill and interest and cost thereon, and of this proceeding, as a special and first lien against the property above described, and ordering and directing the sale of said property by the sheriff of the city of St. Louis, to satisfy the amount found to be due as aforesaid and costs, and plaintiff asks for such other and further relief as it may be entitled to in the premises."

The question of it not being a suit to enforce the collection of taxbills is evidently an afterthought, either induced by a recent opinion of this court, which will be discussed later, or by the failure of the record to show that such taxbills were introduced in evidence.

If it was necessary to plead the issuance of the taxbills, it was necessary to prove such issuance. The answer was a general denial, and there is no proof of the issuance of the taxbills. If we are right in the conclusions reached, which are to follow, then this failure to introduce the taxbills is such failure of proof as to authorize the reversal of the cause.

II. We suggested in paragraph one above that we would notice a recent opinion of this court. Not

only so, but we are required to notice several opinions in order to get our own bearings. Not until the recent case of Eyssell v. City of St. Louis, 168 Mo. 607, were the proceedings of this character looked upon otherwise than proceedings to enforce the collection of special taxbills. Of course this involved the enforcement of the lien given by law. The Eyssell case has since been followed upon this point by the case of St. Louis v. Annex Realty Company, 175 Mo. 63. In the Eyssell case it was held that after the circuit court had approved the report of the commissioners, there was then a judgment, complete within itself, in a way, and nothing further was required; that the issuance of a taxbill, whilst provided for, required and authorized by the Municipal Code, was a mere useless formality, without substance in law, and of no force, in the collection of assessed benefits; that the proceeding to collect was in the nature of a *scire facias* upon that judgment, and not an action upon the special taxbill, issued in the sum of the assessed benefit. We have been unable to bring ourselves wholly within the reasoning of the opinion of the learned jurist in the Eyssell case. Nor have we been able to reconcile this case, and the one following it, with other cases. That is to say, we do not agree with the holding of the Eyssell case, wherein it says that the approval of the report of the commissioners is a final judgment, and in a case where benefits solely are assessed, that there is nothing further to be done, save and except the enforcement of that judgment. We have in the case at bar practically the same charter provisions involved in the Eyssell case, i. e., sections 2 to 10 of article VI, of the Scheme and Charter. These sections provide (1) for the condemnation of private property for public use, and (2) for a special assessment or special tax, within a certain prescribed district, to pay for the damages given to the parties whose property is taken. As to the first subject pro-

vided for in these sections it is purely the exercise of the right of eminent domain. Upon the petition of the city in the Hamilton case, the circuit court was authorized to enter a judgment as to the matter of damages suffered by individuals whose property was taken for public use. We have set out the material parts of this petition and the prayer thereof in full. Upon such petition the judgment as to the amount of damages granted to these parties, whose land was being appropriated, was a final judgment, no appeal having been taken therefrom. But this petition would not authorize a court to assess benefits within a prescribed district, with which to pay for such damages. Nothing is said in said petition about there being any benefit district, nor about the assessment of benefits. Judgments of courts cannot go beyond the issues made by the pleading, and in this case when the court confirmed the report of the commissioners, that confirmation went only to the subject-matter as outlined in the issues made by the pleadings, which were the condemnation of private property for public use, and the determination of the damages suffered by reason of the taking of such property by the public. So that we agree to the opinion in the Eyssell case, in so far as it holds that the judgment confirming the report of the commissioners as to the damages suffered, whether such confirmation is by reason of no exceptions being filed, or by reason of a hearing upon exceptions filed, is a final judgment and is in fact a judgment of a court which can be enforced. We are not prepared, however, to say that a court has authority under these sections, or any other law or ordinance, to assess taxes, either general or special, for these damages or any other damages.

BRACE, J., in City of St. Louis v. Ranken, 96 Mo. l. c. 501, says: "The law-making power, doubtless, might provide for the assessment as well as the collection of taxes by suit, but the suggestion that it had

done so in a given case would be so novel as to invite a careful scrutiny of the law said to authorize it.'' The same provisions were under consideration in that case as are here.

Like Judge BRACE, we would scan with much care a law which purported to allow both the assessment and collection of taxes in a single suit, and with much greater care a law which we thought undertook to vest the courts with the governmental function of levying taxes, either general or special. Nor are we even prepared to go as far as did Judge BRACE in the Ranken case, supra, wherein he indicates, with much doubt, however, that possibly the lawmaking power might confer upon the courts the purely governmental function of assessing a tax.

We likewise agree to the opinion in so far as it says that the approval of the report is final as to the amount of benefits which may be assessed against the property of those in the benefit district, if proper notice throughout had been given and all previous steps legally taken, but do not agree that such confirmation of the report of the commissioners upon this branch of the case is a judgment which of itself can be enforced against the property, or upon which a *scire facias* can issue.

A careful analysis of these sections of the charter will show that the proceeding in the circuit court is dual in character, as above stated. As to the condemnation of private property, and the assessment of damages therefor, the courts are proceeding in regular channels, and in well-defined lines of judicial work. The other branch of the proceeding is one levying a special tax and defining a benefit district, wherein it shall be assessed.

To our mind when the circuit court appoints the commissioners under section 4 of article 6, and the commissioners proceed, under the authority of section

5 of the same article, to assess benefits as well as damages, in so far as assessing benefits and defining the benefit districts are concerned, such commissioners are governmental agents of the municipality, clothed with the power to assess taxes, and the special taxes so assessed "shall be collected as provided by ordinance." Such is the language of section 5, and why say, "shall be collected as provided by ordinance," if a valid and enforceable judgment was to be rendered in the condemnation proceeding? In other words, we are of opinion that the most which can be made of this branch of the proceeding is that these commissioners are the municipal agents, appointed under the provisions of law, to assess a tax, and that there is provided a court review of their actions. Not that in confirming their report as to special benefits the court enters a judgment assessing, levying and in effect collecting the taxes, as held in the Eyssell case, but that it amounts to nothing more than a court review of the acts of governmental agents.

This view is sustained by the language of section 9, aforesaid. By that section the report of the commissioners is held in abeyance by the court until it can be reported to the assembly of said city for its approval.

When the Municipal Assembly approves the report of the commissioners, such approval is in substance a completion of the assessing and levying of the special tax. At this point, when the governmental agency has thus assessed and levied the tax, then for the first time does the court take up the report to review it. If the report is then approved by the court, the review of the work of the taxing power is complete and the amount becomes fixed, but there is no further judgment. But according to section 5, these taxes so assessed and levied, "shall be collected as provided by ordinance." Thus the charter itself contemplates that

further provisions shall be made for the collection of the taxes. Why use the words, ''and shall be collected as provided by ordinance,'' if, in the condemnation proceeding there is to be a binding judgment, enforceable within itself, and upon which *scire facias* could issue?

BRACE, J., in the Ranken case, supra, 96 Mo. l. c. 504, in discussing this question, says:

''The charter (sec. 26, art. 3) expressly confers power upon the city by ordinance to assess, levy and collect all taxes for general and special purposes, and to establish, open, vacate, alter and widen its streets. The foregoing provisions of the charter confer upon the city the power to condemn private property for the purpose of widening a street, and prescribes the manner in which it shall be done, and how compensation shall be made to the owner. It also confers upon the commissioners, appointed in a proceeding for that purpose, the power, *subject to review by the circuit court,* to determine the amount of damages to be paid to the owners, and to apportion that amount between the city and the citizens whose property will be specially benefited and also the power to determine what property will be so benefited and the amount of such benefit. The mode in which this last power is to be exercised by the commissioners is, however, not specifically pointed out in the charter. In that respect, the ordinance supplements the charter (as it might well do, the power having been granted, the method of its exercise not having been provided for in detail) by providing that the commissioners shall erect and define a district within which property will be especially benefited by the improvement in their opinion, and that, before they proceed to assess the benefits against the property in such district, notice shall be given to all parties interested of the establishment of such district, its metes and bounds,

the time when and place where the assessment of the property in such district will be made; when and where they have the right to appear and be heard, and further providing for a rehearing in the circuit court on the report of the commissioners, on exceptions filed by any one dissatisfied with the apportionment of the commissioners.

"The determination of the question, what property of the citizens will be benefited by a public improvement, is the exercise of legislative power, whether exercised by the Legislature directly or by municipal authorities to whom the power is delegated for that purpose, and 'due process of law is not essential to its legitimate exercise.' These authorities may determine directly the district in which property will be benefited and the amount of the benefit, and erect a uniform standard for its apportionment therein." The italics in the above are ours.

So that in our judgment, these commissioners, on the question of benefits, act as assessors for the municipality, in the matter of determining the amount of the special tax against each tract of land, and when the Municipal Assembly approves their report as above stated, the assessment becomes complete, subject only to a review by the court. On this review the court can say that your taxing power has been legally and equitably exercised, and your assessment is proper, and to this extent only does the judgment go, and no further. The power thus exercised by the court is similar to that exercised by boards of equalization and is final and binding to that extent and no further. That this court formerly looked upon the proceedings under these St. Louis charter provisions as dual in character, i. e., as being both a condemnation proceeding, and a review of the assessment made by the municipal agents, is thoroughly recognized in the Ranken case in this language: "It

is not necessary that he should be made a party defendant by petition and summons in the condemnation proceedings. It is sufficient if he is made a party defendant to the tax-assessing branch of the proceeding, by the appropriate and characteristic notice usually given to the taxpayer, provided for in the charter and ordinances, and an assessment made in strict conformity to their requirements is a valid assessment."

And it was upon this theory solely that the court in that case held that it was not necessary to summon the party whose land was benefited by the opening of the street in the condemnation proceeding, but as to this party it was sufficient if he be brought before the assessing board by statutory or ordinance notice.

The levying and assessing of taxes whether general or special are governmental functions other than judicial functions, and although we think provisions for a court review are proper, yet we do not say that the powers thus conferred upon the court can go to the extent of permitting the court to fix the assessment, further than by its mere approval of the acts of the agency authorized to assess. This question is not in the case at bar, and we do not pass upon it. The Ranken case, supra, never looked upon the judgment otherwise, and we hardly see how the Ranken case and the Eyssell case can both stand. Our views, upon this question, accord with the Ranken case and not with the Eyssell case.

Further, the Eyssell case is wrong in effect holding that the special taxbills are as so much waste paper.

Section 5 of the charter says these taxes ''shall be collected as provided by ordinance.'' This provision is as much of the organic law of the municipality as any other portion thereof, and the Eyssell case cannot stand, without striking down that provision, which is in effect done in that case. The municipality had supplemented the charter provisions with ordinances, by

the provisions of which taxbills were to be made out, and these taxes collected by suit upon such taxbills. Such was evidently done in this case, and for the failure to introduce such bills in evidence, there can be no recovery. In other words, there must be a compliance shown not only with the charter provision, but likewise with the provisions of the ordinances, expressly authorized by the charter. These ordinances require the issuance of taxbills and require suit to be brought upon them for the collection of the tax. It might be that the Municipal Assembly could have, by ordinance, provided a different method, as suggested in the Eyssell case, supra, but suffice it to say, that it has not so done. In so far as the Eyssell case is in conflict with the views herein, the same is overruled.

III. Next in order is the sufficiency of this assessment. In the Ranken case, supra, it is held that the validity of the assessment can be inquired into, so far as determining whether or not the assessment and levy have been made in accordance with the law. We there said:

"The only question that can be raised in such a suit is as to the validity of the assessment and levy. The law does not make the taxbill evidence, and if the defendant questions the validity of the assessment, before the plaintiff can recover, it must be shown that the tax was assessed in the manner required by law. As we have seen, the defendant under the law is entitled to notice and an opportunity to be heard upon the question of the amount of benefits that ought to be charged against his property. If such notice has not been given, or a hearing has been denied him, the assessment is void. If there is no assessment, there is no tax, no cause of action, and that is the end of the case. The plaintiff cannot in that suit create a cause of action by discarding the assessment of the commissioners, and, on the trial, showing that the defendant's

property was in fact benefited by the improvement, and that it ought to be assessed therefor, and charged with the amount of such benefit, as was attempted to be done in the case at hand, for the petition herein does not aver the performance of many things required by the ordinance in order to effect a valid assessment, nor does it contain any general averment from which it can be inferred that they were done.''

We approve the foregoing language, and herein there is further conflict between the Ranken case and the Eyssell case. The Eyssell case holds that there is a final judgment, which cannot be questioned, and which can be enforced, although it is difficult for us to see just how enforced.

The Ranken case looks upon the action of the commissioners in giving notice to all parties who may be benefited as giving a hearing at which the special tax is to be determined, which determination may be later reviewed by the court, and either approved or rejected, but not fixed by the court.

In the case at bar defendants claim that the proceeding is void for two reasons: First, they say that they were not parties to the condemnation suit, and for that reason the entire proceeding is void. This contention is not good. None of their property was to be taken or in fact was taken. Their property simply abutted on one of the alleys to be established. Had the alleys required the appropriation of any part of their land, then they should have been made parties to the condemnation branch of the proceeding. Otherwise they did not have to have notice of this suit. [City of St. Louis v. Ranken, 96 Mo. 497.]

Second, they contend that the notice of the tax-assessing branch of the proceeding given by the city counselor was wholly insufficient, and for that reason the proceeding is void. In this we think they are correct. The tax-assessing branch of the proceeding de-

pends for its validity upon a compliance with the law, including the law requiring notice, or a certain kind of notice. Before benefits can be charged against property in the way of special taxes, the case-law generally requires a notice of some kind to the end that each property-owner, at some stage of the proceeding, may be heard as to what proportion of the entire tax shall be assessed against his land. [Paulsen v. City of Portland, 149 U. S. 33; St. Louis v. Ranken, supra.] If there had been but one alley in Block 3788, then we think the notice sufficiently described the district in which the special taxes were to be assessed. It would have been better and nearer a strict compliance with the ordinance, had it given the boundaries thereof in express words, but the notice said the benefit district was City Block No. 3788, which, if there had been but one alley running through the block, would have been sufficient. [City of St. Louis v. Koch, 169 Mo. l. c. 592.]

The real trouble about this notice is that it does not designate which of the two alleys authorized by ordinance No. 17721, is to be considered at the sitting of the commissioners. The notice reads "in the matter of opening an alley in City Block 3788 under ordinance No. 17721," when in fact two alleys are provided for by said ordinance, in one of which the defendants could in no wise be interested or affected. Their property was to the east of the north and south alley and abutted it, but did not touch the east and west alley at any point. Section 675 of the Municipal Code has this provision: "Provided, however, that in the opening of an alley, the benefit shall be paid by the owners of property in said block abutting or adjoining said alley." Under ordinance 17721, and this section of the Municipal Code, it became necessary to establish two benefit districts, one including the property abutting upon the east and west alley, and another including the

property upon the north and south alley. By the terms of the Municipal Code, the abutting owners upon the east and west alley could not be assessed for the north and south alley, unless some portion of their property abutted upon both, and vice versa. The commissioners must designate a district, and that district must be designated, in this instance, in such way as to include only the abutting property upon the alley to be opened. The notice, therefore, was wholly insufficient in specifying a benefit district not authorized by the Code, and in not specifying which of the two alleys was to be considered.

The proceedings throughout, from beginning to end, speak of an alley in Block 3788, and nowhere speaks of two alleys. The commissioners in fact never fixed benefit districts for two alleys, but only fixed an illegal district for one alley. In so far as these defendants, who were never served with notice or summons in the condemnation branch of the proceedings, are concerned, the tax-assessing branch of the proceeding is totally void. Nor is the finding of the commissioners that due notice had been given them, such a finding and judgment as cannot be disputed in the present suit. It is like every other tax-assessment. When the validity of the assessment is at issue, it devolves upon the plaintiff to show a compliance with the law regarding the assessment and levy of the tax. The taxbill is not made prima-facie evidence of a compliance with the law. If the taxbills were prima-facie evidence, then the result would be a shifting of the proof, but the defendants could show that there was no legal assessment. The action of these commissioners does not constitute an unimpeachable judgment. Such is the doctrine of the Ranken case, and that is a well-considered opinion by the whole court. This obviates a review of the long list of authorities cited

to the effect that judgments cannot be impeached collaterally. This is not a judgment. It is simply the record of the acts of a governmental agency in the course of assessing a special tax. These acts are always open to investigation in determining the question as to whether or not the tax has been legally assessed. To say the least of it, this notice should have designated which alley was to be considered by the commissioners. We also think that the designation of an unauthorized benefit district, and equalizing and assessing special taxes therein, would be fatal.

We, therefore, hold that as to these defendants the tax-assessing branch of the proceeding in the case of the City v. Hamilton was absolutely void and of no effect, and for that reason the judgment in the case at bar is reversed and judgment entered here for the defendants.

All concur.