FRED J. SCHWAB, Plaintiff in Error, v. CITY OF ST. LOUIS.

Division One, July 30, 1925.

1. **CLOUD ON TITLE:** Void Lien: Legal Acumen: Jurisdiction of Equity. If the defect or invalidity of the lien, alleged to be void, is such as to require legal acumen to discover it, whether it appears upon the face of the record or proceedings, or is to be proven *aliunde*, the powers and jurisdiction of a court of equity may be invoked to remove it as a cloud on the title. A court of equity has jurisdiction to determine the validity of the liens of benefit judgments and assessments against plaintiff's lands, alleged to be now void, because the charter provision making special benefit assessments a lien for ten years is contrary to the Constitution and statutes, and having determined such question to remove or uphold said liens.

Schwab v. City of St. Louis.

2. ————: ————: Special Tax Liens: Judicial Sale: Action at Law.
The owner of lands, against which benefits for a public improve-
ment have been assessed, the assessments having ripened into a
judgment and by the city charter made a lien for ten years, which
provision he asserts is void, because contrary to the Constitution
and statutes, is not required to sit idly by for several years and
wait until the city shall undertake to levy execution upon his
property and then, by motion to quash the execution or some
other appropriate action at law, raise the question of the validity
of the liens; but the liens being apparent upon public records
and thereby hindering him in the free and unrestricted use and
disposition of the property, and thereby casting a cloud upon his
title, he is entitled to the present remedy afforded by a court of
equity to determine the constitutional question and to remove the
cloud.

3. BENEFIT ASSESSMENTS: Judgment: Five-Year Limitation:
Conflict of Charter with Statute. Under the existing charter of
St. Louis condemnation benefit assessments are final judgments of
the circuit court, upon which special executions may issue for the
collection of benefits so found due. They are not mere ministerial
or administrative acts of officials or agents designated by legis-
lative enactments fixing the amount of the special tax, to be col-
lected as general taxes are collected, or as may otherwise be pro-
vided by law. The charter of 1914 provides a complete and ef-
fective method of assessing damages and benefits in condemnation
proceedings by and through the appointment of commissioners as
agents of the tax assessing authority and the confirmation of their
report in a judicial or *quasi*-judicial proceeding in the circuit court,
and when that procedure is duly followed the commissioners' re-
port, when confirmed by the circuit court, is final and conclusive,
and becomes a final judgment upon which execution may issue to
collect the benefit assessments; and therefore the city is not re-
quired to bring any subsequent suit to enforce their collection,
and hence there is no lack of harmony between said charter pro-
vision and Section 12951, Revised Statutes 1919, which limits the
time of commencing suits for the recovery of general taxes against
real estate to five years after delinquency in the payment thereof.

4. JUDGMENT: On Benefit Assessment: Lien for Ten Years: Conflict
with Statute. Judgments for the collection of local assessments
and special benefits are *in rem*, not *in personam*, and can only be
for the enforcement of the lien against the particular property
assessed, and as the General Assembly has not enacted a general
law fixing the duration of the lien of such a judgment a city un-
der a general charter, such as St. Louis, may fix the duration of
the lien at ten years from the entry of the judgment of confirma-

tion, and such charter provision does not violate the constitutional requirement that "such charter shall always be in harmony with and subject to the laws of Missouri." Sections 1555 and 1556, Revised Statutes 1919, declaring that "the lien of a judgment . . . shall continue for three years," subject to be revived, relate to judgments *in personam*, and do not affect the validity of such charter provision, neither does any other statute.

5. ————: ————: ————: **Special Law.** The Charter of St. Louis in providing that a judgment on a special benefit assessment against land shall be a lien for ten years does not conflict with the provision of the Constitution (Art. 4, sec. 54, par. 17) that "the General Assembly shall not pass any local or special law regulating . . . the enforcing of judgments, or prescribing the effect of judicial sales of real estate." That provision relates to the enforcement of judgments, and not to liens, whether of benefit assessments or otherwise, and under the general statutes a judgment may be enforced at any time within ten years after its rendition, and hence the charter provision is not special or local.

6. ————: ————: ————: **Reasonable.** There are reasonable and just grounds for a provision in a city charter that a judgment on a special benefit assessment shall be a lien on the lot for a longer period than three years, where it contains a further provision that such assessments, in case of a vast improvement, may be paid in seven annual installments, and that bonds may be issued, payable out of money collected upon such assessments.

7. **PETITION: Cause of Action: General Demurrer Sustained: Grounds Assigned.** Although the trial court assigned a wrong reason for sustaining a general demurrer to plaintiff's petition, charging that it did not state facts sufficient to constitute a cause of action, if the judgment was general and final, and the petition did not state a cause of action, the judgment will be affirmed on appeal.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 323, p. 840, n. 83; Section 347, p. 855, n. 51. Equity, 21 C. J., Section 27, p. 50, n. 32; Section 106, p. 131, n. 39. Municipal Corporations, 28 Cyc. p. 1145, n. 59; p. 1186, n. 27; p. 1202, n. 10; p. 1210, n. 56; p. 1230, n. 98; p. 1242, n. 82 New. Quieting Title, 32 Cyc. p. 1305, n. 2; p. 1314, n. 58. Statutes, 36 Cyc. p. 1013, n. 64.

Writ of Error to St. Louis City Circuit Court.—*Hon. Frank Landwehr,* Judge.

AFFIRMED.

*L. M. Hall* for plaintiff in error.

(1)   The jurisdiction of a court of equity to hear and determine bills to remove clouds from title to real estate, both in ancient and modern practice, is too well established to require authorities, and is fully sustained by this court.   4 Pomeroy on Equity Jurisprudence, sec. 1399; Bispham's Principles of Equity (6 Ed.) sec. 575; Bank of Tipton v. Davidson, 40 Mo. App. 121; Truesdail v. McCormick, 120 Mo. 39; Eyssell v. City of St. Louis, 168 Mo. 620; McLaughlin v. McLaughlin, 228 Mo. 654; Shelton v. Howell, 232 Mo. 369.   (2)   Anything is a cloud on title which is calculated to cast doubt or suspicion upon the title or seriously to embarrass the owner, either in maintaining his rights in the use, or in disposing of, his property; thus a deed, mortgage, judgment, tax levy, etc., apparently valid, may constitute a cloud. 7 Cyc. 255; State ex rel. Bayha v. Phillips, 97 Mo. 331; Truesdail v. McCormick, 120 Mo. 39; Leslie v. St. Louis, 47 Mo. 474; Dickerson v. Dickerson, 211 Mo. 497.   (3) No execution having ever been issued thereon, the lien of the judgments set out in the petition expired in 1919, unless it be held that the provisions of the charter supersedes and nullifies the state law.   R. S. 1919, sec. 1556; Eyssell v. St. Louis, 168 Mo. 620; Smith ex rel. v. Rogers, 191 Mo. 344.   (4)   Whether the state law or the city charter governs is a question that can only be determined by judicial action, and is not apparent on an inspection of the record.   The case is therefore cognizable in a court of equity.   Bank of Tipton v. Davidson, 40 Mo. App. 121; Gazollo v. McCann, 63 Mo. App. 414; H. & St. Jo. Ry. Co. v. Nortoni, 154 Mo. 142; Mahen v. Ruhr, 240 S. W. 166; Hartmann v. Owens, 240 S. W. 116; Merchants Bank v. Evans, 51 Mo. 335; Rodgers v. First Natl. Bank, 82 Mo. App. 377.   (5)   The city cannot by its charter enact a special local law as to judgment liens that is prohibited to the legislative body of the State and supersedes it. The general law must prevail.   Mo. Constitution, Art. 9, secs. 16, 23, 25; Art. 4, sec. 53, par. 17; Kansas City v. Field, 270 Mo. 510; Hoag v. Ward, 186 Mo. 336.   (6) A remedy at law, in order to oust a court of equity of its

jurisdiction in such a case, must be a present and adequate remedy, not merely one contingent upon some act by the adverse party, which may never be taken. McDaniel v. Lee, 37 Mo. 204; West v. Wayne, 3 Mo. 16; Jacobs v. Cauthorn, 238 S. W. 445; Pocoke v. Peterson, 165 S. W. 1022; 1 Story's Equity (11 Ed.) sec. 33; 16 Cyc. p. 41; Hanson v. Neal, 215 Mo. 278. (7) So much of Section 8, Chapter XXI of the Charter of 1914 as provides that judgments for benefits shall "be a lien on such property for ten years from entry of the judgment" is unconstitutional and void. Kansas City v. Fields, 270 Mo. 510. (8) There is no difference between general and special executions in issue and levy. Smith v. Rogers, 191 Mo. 344; Eyssell v. St. Louis, 61 Mo. 620; Skillman v. Clardy, 256 Mo. 320; Hoag v. Ward, 186 Mo. 325.

*Oliver Senti*, City Counselor, and *Daniel Bartlett*, Associate City Counselor, for defendant in error.

(1) A special judgment for benefits against specific property is a lien on such property for ten years from the entry of the judgment. Article XXI, sec. 8, City Charter. (2) If Article XXI, Section 8, of the charter is unconstitutional because of an alleged conflict between the charter provision and the laws and Constitution of Missouri, that fact would always appear to the court without the necessity of any evidence whatsoever. The courts take judicial notice of the Constitution, the laws and the charter of the city. Mo. Constitution, art. 9, sec. 21. Therefore, an alleged lien depending for its existence upon an unconstitutional provision of the charter would be no lien at all and would constitute no cloud on plaintiff's title which a court of equity would interfere to remove. Story on Equity Jurisprudence, sec. 826; Bispham's Principles of Equity (6 Ed.) sec. 575; Pomeroy's Equity Jurisprudence (3 Ed.) sec. 1399; Verdin v. St. Louis, 131 Mo. 116; Townsend v. New York, 77 N. Y. 542; Turner v. Hunter, 225 Mo. 83; Stuart v. Palmer,

74 N. Y. 183, 30 Am. Rep. 289. (3) If "special judg-ments for benefits" are final judgments upon which exe-cution will issue the charter provision (Article XXI, sec. 8) is in harmony with the Constitution and general laws of the State, and the liens of such special judgments continue for ten years. R. S. 1919, sec. 1556; Kansas City v. Field, 270 Mo. 513; Barber Paving Co. v. St. Joseph, 183 Mo. 451; Kansas City v. Bacon, 147 Mo. 272. (4) If "special judgments for benefits" are ministerial acts assessing the benefits, the charter provision (Ar-ticle XXI, sec. 8) is in harmony with the Constitution and general laws of the State, and the liens of such special judgments continue for ten years. R. S. 1919, secs. 12951, 12907; Houck v. Little River Dist., 239 U. S. 265; Ran-ney v. Cape Girardeau, 255 Mo. 514; In re Life Assn. of America, 12 Mo. App. 49.

SEDDON, C.—Writ of error to review the final judgment of the Circuit Court of the City of St. Louis, sustaining defendant city's demurrer to plaintiff's sec-ond amended petition and discharging defendant with-out day, with costs of suit, plaintiff having declined to plead further.

Plaintiff's second amended petition is a bill in equity, cast in two counts, to remove alleged clouds on plain-tiff's title to certain city lots within the city of St. Louis. The salient facts pleaded are that plaintiff is the owner in fee simple and in actual possession of the several lots described in the petition, having acquired title thereto by purchase at public sale for valuable consideration, on February 27, 1922; that on February 17, 1916, in said St. Louis Circuit Court, the city of St. Louis in a certain condemnation suit or proceeding, wherein one Benjamin Biel, the then owner of said lots, was a defendant, was awarded certain separate judgments for benefits against the said Biel as the owner of the several lots, which judg-ments were declared to be special liens upon said several lots, and are recorded in Condemnation Record No. 7, at page 446 and following, of the records of said circuit

court. In the second count of the petition, plaintiff alleges another record of similar judgments for condemnation benefits in favor of the city of St. Louis against the same party defendant and against the same lots, made and entered on October 10, 1916, which judgments were likewise declared to be special liens against said several lots, and are recorded in Condemnation Record No. 8, at page 99, of the records of said circuit court. Plaintiff alleges that said benefit judgments were either final judgments, upon which executions might issue for the collection of the sums so found due, or ministerial acts fixing the amounts of the assessments or tax to be otherwise collected, as might be provided by law, and as such were a tax only. Plaintiff also alleges that no execution has ever been issued to enforce or collect said judgments, nor have any other steps been taken by defendant city to enforce or collect the same. Plaintiff further states that by reason of the provision of Section 1556, Revised Statutes 1919, the liens of said judgments expired before February 27, 1922, the date when plaintiff acquired title; that Section 8 of Chapter XXI of the Charter of the city of St. Louis, as adopted in 1914, and in force at the time of the rendition of said judgments for benefits, provides that judgments for benefits in such condemnation proceedings shall be a lien on the properties so charged for ten years from the entry of such judgments, and that said charter provision is invalid and void; that if said judgments were ministerial acts only and amounted to the levy of an assessment or tax to be collected by ordinary process of law, then the collection of such tax is barred by reason of the provisions of Section 12951, Revised Statutes 1919. The petition also charges that the city of St. Louis, by virtue of said charter provision, claims that said judgments are valid and existing liens against plaintiff's several lots and wrongfully threatens to cause execution to issue thereon and public sale thereof to be made to satisfy said judgments or to otherwise undertake to collect the same, by reason whereof a cloud is cast on plaintiff's title and he

is prevented from the lawful use and disposition thereof; that, should defendant endeavor to so enforce said judgments, plaintiff will be put to great trouble and expense to protect his title and that plaintiff is without adequate remedy at law; wherefore, he prays for a finding and decree of the court that the liens of said judgments no longer exist, that title to said lots be vested in plaintiff free and clear of said pretended liens, and for all proper relief.

Defendant's demurrer is general, averring that the petition does not state facts sufficient to constitute a cause of action against defendant, and that it appears by plaintiff's own showing that he is not entitled to the relief prayed.

Upon sustaining defendant's demurrer to the petition, the trial chancellor filed a memorandum stating the reason for his action, thus: "It is the opinion of the court that the remedy sought by plaintiff in a direct proceeding will not lie. It would be different in a case of this kind were the city of St. Louis to attempt to execute. The plaintiff might then make his attack accordingly, but, until such time as the property is threatened, an action of this kind by plaintiff cannot be maintained."

I.   Defendant in error at the outset insists that, because of the repugnant allegations of plaintiff's petition or bill, a court of equity has no jurisdiction to entertain the bill. It is argued that plaintiff's bill seeks to remove alleged clouds on the title to real estate, cast thereon by reason of certain apparent liens imposed by Section 8, Article XXI, of the St. Louis Charter, but which charter provision plaintiff alleges to be unconstitutional and void for the reason that it is not in harmony with and subject to the Constitution and general laws of this State; that an unconstitutional charter provision is void and of no effect and a lien pretended to be based thereon is no lien at all. Hence, it is argued that, inasmuch as all courts of the State must take judicial notice of the St. Louis Charter

*Equity Jurisdiction.*

(Missouri Constitution, Article IX, Section 21), if there is a fatal lack of harmony between the Constitution and general laws of the State and the charter provision, then that fact appears to the court without the necessity of proof *aliunde,* and there is no .cloud upon plaintiff's title calling for the interference of a court of equity. In other words, if the pretended liens are void because the charter provision fixing their duration is contrary to and not in harmony with the Constitution and general laws of the State, then they are void on the face of the record, and a void lien casts no cloud on plaintiff's title. In such case, it is argued that plaintiff has a plain, adequate and complete remedy at law and a court of equity has no jurisdiction. Defendant in error bottoms its contention upon what was said by Judge SHERWOOD in his dissenting opinion in Verdin v. St. Louis, 131 Mo. l. c. 103 et seq.; and also upon Turner v. Hunter, 225 Mo. 71.

Opposing the foregoing contention, plaintiff in error relies upon the so-called "legal acumen" doctrine, early announced by this court in Merchants Bank v. Evans, 51 Mo. 335, and subsequently followed in the majority opinion in Verdin v. St. Louis, 131 Mo. 26; Jewett v. Boardman, 181 Mo. l. c. 657; Pocoke v. Peterson, 256 Mo. l. c. 518; Maxwell v. Growney, 213 S. W. l. c. 429.; and in the late case of Mahen v. Ruhr, 293 Mo. l. c. 506. So it would appear from the foregoing decisions that that doctrine is fairly well established in the jurisprudence of this State. The doctrine announced by those cases is that, if the defect or invalidity is such as to require legal acumen to discover it, whether it appears upon the fact of the record or proceedings, or is to be proven *aliunde,* then the powers or jurisdiction of a court of equity may be invoked to remove the cloud. We believe that the question here raised by plaintiff's petition, which goes to the validity of the liens of the benefit judgments or assessments now affecting plaintiff's title and makes necessary a judicial determination of the validity and constitutionality of the provision of the St. Louis Charter fixing the length and duration of

such liens, clearly brings plaintiff within the rule announced, for legal acumen is required to discover their validity or invalidity, as the case may be, even though such matter appears upon the record of the proceedings. Indeed, learned counsel for the respective parties to this action appear to be as far apart as the poles in their own respective conclusions upon the question involved.

Furthermore, as said in 16 Cyc. 41: ''The existence of a remedy at law does not deprive equity of jurisdiction unless such remedy be adequate. By this is meant that it must be clear, complete and 'as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' ''

In Pocoke v. Peterson, 256 Mo. l. c. 519, we said: ''Moreover, to oust jurisdiction in equity the remedy at law must be so complete that it attains the full end and justice of the case, reaching the whole mischief and securing the whole right of the party in a perfect manner at the present time and in the future. [Hanson v. Neal, 215 Mo. l. c. 279, et seq.]''

Must plaintiff sit idly by with folded hands and wait several years until the defendant city shall undertake to levy executions upon his property with the purpose of selling it at judicial sale and then, and not till then, by motion to quash the executions, or by other remedy at law, raise the question of the validity of the benefit assessment liens? Surely, no. The liens are apparent upon the public records and, until their validity and effect is judicially determined, they necessarily hinder the plaintiff in the free and unrestricted use and disposition of his property, thereby casting a cloud upon his title. He is entitled not only to a future, but to a *present* remedy, which is afforded only by a suit in equity to remove the cloud. Equity has exclusive jurisdiction to remove a hurtful cloud upon a land title. [Pocoke v. Peterson, supra.] It clearly appearing from plaintiff's bill that its purpose is to remove an apparent cloud upon his title, the circuit court, sitting in equity,

had jurisdiction to entertain the bill and take cognizance of plaintiff's claim, even though the court in the end may have had occasion to rule, upon demurrer filed thereto, that the bill does not state facts sufficient to entitle plaintiff to the equitable relief prayed. In other words, the trial court had jurisdiction in equity to entertain the cause and to rule upon the sufficiency of the petition raised by general demurrer, and the correctness of its ruling is properly before this court on writ of error to review the same.

II. It next becomes necessary for us to determine whether, under the scheme and provisions of Chapter XXI of the St. Louis Charter, adopted by vote of the people of that municipality in 1914, condemnation benefit assessments are in any sense final judgments of the

Benefit:
Collection:
Judgment:
Five-Year
Limitation.

Circuit Court of the City of St. Louis, upon which special executions may issue for the collection of benefits so found due, or whether they are mere ministerial or administrative acts of officials or agents designated by legislative enactment in the form of a city charter, fixing the amounts of a special assessment or tax, to be collected as general taxes are collected, or as may otherwise be provided by law. In discussing this question it is advisable that we here briefly set forth the general scheme or plan of the St. Louis Charter with respect to proceedings for the condemnation of private property for public use and the method of determining the amount of damages for private property so taken or damaged and the assessment of benefits against private property not taken or damaged, in order to create a fund out of which to pay the damages assessed. The whole plan or scheme is embodied in Article XXI of the St. Louis Charter, entitled "Condemnation," consisting of sixteen separate sections.

Section 1 provides that "condemnation of or damage to private property, real or personal, or any easement or use therein, for public use, shall be effected as

herein provided and as may be further provided by ordinance not inconsistent with this charter.'' It provides for the passage by the board of aldermen of an ordinance, recommended by the board of public service, for the appropriation of any private property or any easement or use therein for any public use. Thereupon, the city counselor, in the name of the city, shall apply promptly, and in no event later than six months after such ordinance is effective, to the Circuit Court of the Eighth Judicial Circuit, or to any judge thereof in vacation, by petition setting forth the general nature of the public use for which the property is to be appropriated or damaged, a description of the property, and the estate or interest therein in each instance, which the city seeks to appropriate or damage, and praying the appointment of three disinterested commissioners to assess damages and benefits, to which petition the owners shall be made defendants by name, if known, and if unknown, by describing their claims and interests in such property and how derived by them. Notice of the filing of the petition, describing the property to be taken or damaged, shall be filed and recorded in the office of the recorder of deeds as a *lis pendens.*

Section 2 provides for the issuance of summons, giving the defendants at least ten days' notice of the hearing on the petition, and for service and return thereof by the city marshal. If the name of any owner is unknown, or if any owner does not reside in the State, a notice giving the general nature of the petition, with a description of the property of such unknown or nonresident owners, and the day fixed for the hearing, shall be published once each week for four consecutive weeks, the last publication to be at least ten days before the hearing, in the newspaper publishing the notices of the court.

Section 3 provides that the court, or judge thereof in vacation, when notice has thus been given, shall appoint three disinterested commissioners, resident freeholders of the city of certain required qualifications, to

assess the damages which the owners may severally sustain by such taking or damaging, and to assess benefits. Trial by jury is accorded to any party entitled to compensation, upon filing in the cause, before the appointment of commissioners, a written demand therefor, and the jury's verdict shall be certified by the court to the commissioners and included in their report. The commissioners shall assess damages for property appropriated or damaged for the trial of which a jury is not demanded.

Section 4 makes it the duty of the commissioners to ascertain the value of the property proposed to be taken and the actual damage done to private property, and "for the payment of all such damages, the commissioners shall assess against all the lots or parcels of property or interests therein especially benefited by the proposed public work or improvement, separately, and in the names of the several owners thereof, the amount that each such lot or parcel of property or interest therein so assessed shall be especially benefited by the proposed public work or improvement, and against the city the balance of the damages over and above the aforesaid special benefits assessed."

Section 5 provides: "The commissioners shall view the property to be taken, damaged or assessed; fix the benefit or taxing district; publish in said newspaper for ten days before beginning their assessment a notice of the boundaries of the benefit or taxing district and of the time and place at which they will assess such damages and benefits; hear the evidence submitted by the parties interested; assess the damages and benefits as of the date said ordinance became effective; and make report, in which at least two commissioners shall concur, of such assessment in writing and under oath to the circuit court. In such report the compensation allowed to and the benefits assessed against each owner shall be separately stated. When the commissioners both assess benefits and allow damages against any one property owner they shall deduct the lesser from the greater."

Section 7 provides that "within twenty days from filing the commissioners' report, exceptions in writing thereto may be filed by any party interested, and upon such exceptions the court shall review the report and may order, on cause shown, a new assessment by other commissioners or make such other orders thereon as justice may require. The court shall hear and dispose of such exceptions with all reasonable speed and *may itself assess benefits anew.*"     (Italics ours).

Section 8 provides:  "The court upon approving the commissioners' report shall *render final judgment thereon* reciting the report and adjudging that the city have and hold the property petitioned for, describing the same, for the purposes specified, upon payment of the damages less the benefits assessed in each instance; *that so much of the report as is a judgment for benefits against specific property be a lien on such property for ten years from entry of the judgment, and prior to all other liens thereon;* and that the city recover the respective benefits in excess of damages assessed in each instance against private property with interest from date of judgment and *have execution therefor.*"   The clerk of the court is required to make and deliver to the comptroller a copy of such judgment, to be recorded in a book and conveniently indexed for that purpose, and the comptroller may forthwith, and shall, at the expiration of time for appeal, forward a copy of the judgment to the board of aldermen, who shall make an appropriation for the payment out of the city treasury of the damages assessed.   The section further provides: "and if any part of such assessment of benefits be not paid when due, *special execution shall issue* on request of the comptroller *against the property charged with the lien,* and proceedings thereunder shall conform, as near as may be, to the proceedings under special executions on ordinary judgments foreclosing liens on lands."   (Italics ours.)

Section 15 provides:  "Ordinances for appropriating or damaging property for markets, public squares, public parks, and other like public uses and improvements

may provide for payment of the special assessments made on lands specially benefited by such uses and improvements in one installment or in *equal annual installments not to exceed seven in number, in which event the judgments* shall so recite; *such judgments* shall bear interest payable annually at the rate of six per centum per annum on any unpaid part thereof from entry until paid, but any part thereof not paid when due shall thereafter bear interest at the rate of eight per centum per annum; and for the purpose of anticipating the collection of such *judgments* the city may issue and sell local improvement bonds, following the procedure, as far as the same is applicable, provided in Article XXIV for bonds issued in anticipation of the collection of special assessments to pay for local improvements; provided, that the city shall not be liable to pay bonds herein provided for, but the same shall be payable solely out of the collections of the particular *judgments.*'' (Italics ours.)

We have omitted a summary of those sections of the article covering details not specially applicable to the points under discussion.

In approaching a discussion of the question in hand, it may be conceded as well settled and established in this State that, while assessments for special benefits and for local improvements in a broad sense are referable to the taxing power, yet they are not taxes in the general acceptation and use of that term, which usually applies to imposts levied for revenue or governmental purposes only. Such has been the uniform holding of this court. [Ranney v. Cape Girardeau, 255 Mo. 514; Kansas City v. Bacon, 147 Mo. l. c. 282; Farrar v. City of St. Louis, 80 Mo. 379; City of St. Louis v. Ranken, 96 Mo. l. c. 500.]

But, while the determination of what property of the citizens will be benefited by condemnation or other similar public improvements and the actual benefits accruing to each particular tract is in fact the exercise of legislative power, that power may be legally delegated by the legislative authority to any appropriate agency. In Houck

v. Drainage District, 248 Mo. l. c. 386, this court, in Banc, said: "It is safe to say that the doctrine is firmly established in this State that the Legislature, acting within its constitutional powers, may fix the territorial limits of special taxing districts, and may also fix the actual or maximum amount of special assessments, which it may place at a level rate, founded upon a unit of area or frontage, or at a rate founded upon a proceeding to ascertain the actual benefit accruing to each particular tract; or it may delegate any or all these powers to an appropriate agency to be chosen or created by it."

The former charter of St. Louis (now superseded by the Charter of 1914, which, as we will hereafter point out, is in many respects radically different from the former charter of that city) was under review by us in the case of St. Louis v. Brinckwirth, 204 Mo. 280, wherein it is held that the delegation of the power of assessing and levying special benefits in condemnation proceedings to commissioners appointed by the circuit court is lawful and a proper exercise of the taxing power. GRAVES, J., delivering the opinion of this court, there said: "So that in our judgment, these commissioners, on the question of benefits, act as assessors for the municipality, in the matter of determining the amount of the special tax against each tract of land, and when the Municipal Assembly approves their report as above stated, the assessment becomes complete, subject only to a review by the court."

And, in an earlier case, City of St. Louis v. Ranken, 96 Mo. l. c. 507, where a former charter of St. Louis was discussed, we said: "And when the circuit court has taken final action upon the report of the commissioners, and the assembly has appropriated the money to pay the damages for the property taken, such assessment becomes final and conclusive upon the question of benefit to such taxpayers, and the amount of that benefit, the lien attaches to the property, and these questions cannot be again raised in any subsequent suit that the city may

find it necessary to bring to enforce that lien in order to collect the tax assessed."

Again, in In re Birmingham Drainage District, 274 Mo. 140, we said: "Although article three of the State Constitution, while distributing the powers of the State Government into three distinct departments—the legis-. lative, executive and judicial—forbids any person 'or collection of persons charged with the exercise of powers properly belonging to one of those departments to exercise any power properly belonging to either of the others, we have held (State ex rel. v. Higgins, 125 Mo. 364, 368) that duties which are not judicial may be performed by judicial officers unless they are clearly such as are confined by the Constitution itself to the executive or legislative department. This literal and altogether reasonable construction is founded in the necessities inherent in all governments. . . . Upon principle as well as upon authority, the doctrine is well settled in this State that the Legislature might itself from its own information fix the boundaries of an incorporated drainage district; and also fix the amount of special assessments for the performance of the work, placing the same at a level rate founded upon a unit of drainage area or upon a proceeding to ascertain the actual benefit accrued to each particular tract; and that it might also delegate any or all these powers to an appropriate agency to be chosen or created by it. There is no more reason to say that it must call to its assistance a court of general jurisdiction in such cases than that it should require the judgment of a court of general jurisdiction in applying the frontage system as a basis for taxation for street improvements or in the assessment of lands for general taxation. In either case, it appoints its own agent and if that agent be a court it may make the power of that court as full and final as if it were vested in a board of commissioners or an assessor."

It, therefore, appearing to be clearly established that the legislative power of levying assessments for condemnation benefits may lawfully be delegated to judicial

officers and even to courts themselves as agents of the taxing authority, as is done in this instance by the St. Louis Charter, do those assessments, when fixed and determined by the commissioners' report and confirmed by the circuit court, become final judgments, in any sense of that term, upon which special executions may issue from that court to collect the same? It may possibly be said that some doubt is cast upon this question by reason of what was said by this court in St. Louis v. Brinckwirth, 204 Mo. 280. That case, however, as we have hereinbefore remarked, involved a construction of the article on "Condemnation" in the former charter of St. Louis, which was superseded by the present charter of that city, adopted in 1914, now under consideration. Vital changes in the organic law of St. Louis have been made since our decision in the Brinckwirth case, supra. The charter under review in the Brinckwirth case provided specifically that benefit assessments in condemnation proceedings "shall be collected as provided by ordinance," which provision we there held "is as much of the organic law of the municipality as any other portion thereof." Pursuant to the direct mandate of the charter then in force, the city had passed certain ordinances under the provisions of which taxbills were required to be made out evidencing the special assessments for benefits and which required such assessments to be collected by the city by suit upon such taxbills. So it was ruled in the Brinckwirth case, and rightly, that "there must be a compliance shown not only with the charter provision, but likewise with the provisions of the ordinances, expressly authorized by the charter. These ordinances require the issuance of taxbills and require suit to be brought upon them for the collection of the tax. It might be that the Municipal Assembly could have, by ordinance, provided a different method, but suffice it to say, that it has not so done."

By the St. Louis Charter of 1914, here under review, the charter framers, evidently having in mind our ruling in the Brinckwirth case, in Section 8, Article XXI,

changed the method of collection of benefit assessments by providing that "the court upon approving the commissioners' report shall render *final judgment thereon* . . . and that the city recover the respective benefits in excess of damages assessed in each instance against private property with interest from date of judgment and *have execution therefor.*" Furthermore, it is provided that "if any part of such assessment of benefits be not paid when due, *special execution shall issue* on request of the comptroller against the property charged with the lien, and proceedings thereunder shall conform, as near as may be, to the proceedings under special executions on ordinary judgments foreclosing liens on lands."

In St. Louis v. Bell Place Realty Co., 259 Mo. 126, the former charter of St. Louis was construed in conjunction with a general ordinance, effective since our decision in the Brinckwirth case, providing that, "if the benefits assessed are not paid or satisfied as provided by charter or ordinance, they shall be collected by either execution or suit upon such final judgment confirming the same." In that case, Division Two of this court, speaking through BROWN, J., said: "In view of the fact that other proceedings may be instituted to establish streets in St. Louis, it is appropriate for us to pass upon the jurisdictional questions tendered by appellants, who assert that, under the rule of law announced by this court in the case of City of St. Louis v. Brinckwirth, 204 Mo. 280, the circuit court could not acquire jurisdiction to render final judgment against defendants for the alleged benefits assessed against their lands, and that execution cannot issue for such benefits. The Brinckwirth case is quite unlike the one now before us." The writer of the opinion then reviews at some length the charter and ordinance provisions effective at that time in St. Louis in condemnation proceedings, and arrives at this conclusion: "Under the charter provisions and ordinance before quoted there exists no substantial ground for appellants' contention that final judgment cannot be

rendered for benefits in this class of cases, nor is there any ground for contending that execution cannot issue on such a judgment.''

While it may be said that the above quoted language of this court in the Bell Place Realty Company case was not necessary to a decision in that case and, hence was *obiter dictum*, yet we find the reasoning and conclusion of law there announced to be sound and particularly applicable to the question now before us in the instant case.

Our conclusion and holding upon this point is clearly supported by the recent ruling of this court in Kansas City v. Field, 285 Mo. 253, a case involving a similar provision of the Kansas City Charter of 1898 relating to condemnation of lands for park purposes. The Kansas City Charter, like the St. Louis Charter now under review, provided for the ascertainment of damages for lands taken and benefits accruing to lands not taken by a jury of freeholders, subject to confirmation of the jury's verdict or report by judgment of the Circuit Court of Jackson County. It further provided for collection of the benefit assessments ''by special execution or executions against the lot, tract or parcel of land charged with the lien thereof.'' It was contended in that case that Kansas City might, by a proceeding in equity as distinguished from the method laid down by the charter, enforce the lien of such benefit assessments. Said this court (285 Mo. l. c. 275), speaking through Goode, J.; ''As we have said above, a remedy was provided in the Kansas City Charter for the collection of assessments against the defendant's lots, and an effective one. Whether the judgment entered upon the verdict of the jury, making assessments for improvements, is a judgment in the full sense and with the ordinary incidents of one, we deem an immaterial question in the present case. Whatever may be the nature of the judgment and whether the lien inhered in the assessment itself as declared by the verdict, or in the judgment entered on the verdict, or in both, the lien was not enforcible until a judgment confirming the verdict had been rendered—was at most with-

out vitality or value. But after judgment it became enforcible by an execution, not only for an installment in default, but for all installments thereafter to accrue, together with the interest on them. It is difficult to perceive why the charter should provide for a judgment and an execution on the judgment to collect the confirmed assessment if it was contemplated that, independently of the judgment, but not until it had been rendered, the assessment lien might be foreclosed by a decree in equity. If this course was in the mind of the Legislature, why provide for collecting the judgment by an execution containing full recitals of the proceeding instead of remitting the matter to equity? However, regardless of that consideration, the essential fact is that an adequate remedy was given by the charter, and nothing was said about an additional remedy by suit in equity.''

Adverting to Section 5 of Article XXI of the existing charter of St. Louis, we find that it is mandatory and obligatory upon the commissioners to ''publish in said newspaper (publishing at the time the notices of said circuit court) for ten days before beginning their assessment a notice of the boundaries of the benefit or taxing district and of the time and place at which they will assess such damages and benefits.'' The publication of such notice, when duly had, amounts to due process of law and confers upon the circuit court jurisdiction to approve the commissioners' report assessing benefits against the property not taken or damaged. [St. Louis v. Ranken, 96 Mo. 1. c. 507; St. Louis v. Calhoun, 222 Mo. 1. c. 53.] In St. Louis v. Bell Place Realty Co., 259 Mo. 1. c. 140, it is said: ''Thus finding that the publication of the five days.' notice prescribed by Section 1069, Ordinances of St. Louis, would give the commissioners jurisdiction to assess benefits and confer upon the circuit court jurisdiction to approve their report and render judgment thereon, it follows that such judgment when entered is final and not subject to collateral attack. The aforesaid charter specifically provides that the circuit court upon the filing of the report of the commissioners,

and the hearing of exceptions thereto, if any be filed, may render final judgment for such benefits. The specific power granted by the charter to the circuit court to enter final judgments for benefits implies the power to make such benefits effective by the issue of execution thereon, there being no constitutional inhibition against the issue of such execution, so that the contention of appellants that no final judgment can be rendered in this class of cases, and that no execution can be issued thereon, is entirely untenable."

Chapter XXI of the St. Louis Charter of 1914 provides a clear, complete and effective method of assessing damages and benefits in condemnation proceedings by and through the appointment of commissioners as agents of the tax assessing authority and the confirmation of their report in a judicial or *quasi*-judicial proceeding in the circuit court of that city, and, from what we have here said, when the charter procedure has been duly and regularly followed, the commissioners' report, when confirmed by the circuit court, is final and conclusive and becomes a final judgment upon which special executions may issue to collect the benefit assessments. Such being the case, the municipality is not required to bring any subsequent suits to enforce the collection of benefit assessments thus levied, and there is clearly no lack of harmony between the charter provision in question and Section 12951, Revised Statutes 1919, which limits the time of commencement of suits for recovery of general taxes against real estate for purely governmental purposes to five years after delinquency of such general taxes.

III. Plaintiff in error contends that, if the special judgments rendered by virtue of Article XXI of the St. Louis Charter of 1914 are judgments upon which executions can issue (and we here so hold), then Section 8 of said article, which provides "that so much of the (commissioners') report as is a judgment for benefits against specific property be a lien on such property for ten years from entry of the judgment" is illegal and void

because not in harmony with Section 1556, Revised Statutes 1919, which provides: ''The lien of a judgment or decree shall extend as well to the real estate acquired after the rendition thereof as to that which was owned when the judgment or decree was rendered. Such liens shall commence on the day of the rendition of the judgment, and shall continue for three years, subject to be revived as hereinafter provided.'' It is also contended that said charter provision is not in harmony with Article IV, Section 53, paragraph 17, of the Missouri Constitution, providing that ''the General Assembly shall not pass any local or special law regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, . . . or the *enforcing of judgments,* or prescribing the effect of judicial sales of real estate.''

Section 16 of Article IX of our State Constitution, granting to any city of more than 100,000 inhabitants the right to frame a charter for its own government, provides that ''such charter shall always be in harmony with and subject to the Constitution and laws of the State.''

Section 23, Article IX of the Constitution, relating to the city of St. Louis, provides that ''such charter and amendments shall always be in harmony with and subject to the Constitution and laws of Missouri,'' and Section 25, Article IX, provides: ''Notwithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State.''

Plaintiff in error argues therefrom that, by reason of the foregoing general statute of the State and the quoted provisions of our Constitution, the liens of the special judgments for benefits laid against his property by the city of St. Louis expired in three years from the rendition of said judgments, and, not having been revived by *scire facias* within that time, the liens no longer exist and the apparent record of the same constitutes a

cloud upon his title which should be removed. Defendant in error, on the other hand, insists there is no lack of harmony between the St. Louis Charter and the general laws and Constitution of the State, and that the liens of said judgments for special benefits exist for ten years from the rendition or entry of said judgments, as provided by the city charter, which time has not expired and within which time special executions may lawfully issue to collect said judgments.

Plaintiff in error, in support of his contention, leans heavily upon Eyssell v. St. Louis, 168 Mo. 607, and Kansas City v. Field, 270 Mo. 500. In the Eyssell case, MARSHALL, J., delivering the opinion of this court, in discussing the subject of judgments for special assessments in condemnation proceedings under the then existing St. Louis charter, remarked: "Such being the nature and character of the judgment in such cases, it follows that while the special benefit is a liability created by law, it is not such a liability as is barred by limitation in five years, under Section 6775, Revised Statutes 1889, because it is a judgment, which while a liabilty created by law, is nevertheless expressly excepted by that section. And being a judgment of the circuit court, the lien thereof expires in three years, under Section 6012, Revised Statutes 1889 [Sec. 1556, R. S. 1919], but the judgment itself is not barred until after the expiration of ten years, and it may be kept alive forever by successive *scire facias* proceedings, every period of ten years under Section 6013, Revised Statutes 1889 [Section 1557, R. S. 1919.]" It might be here said that the Eyssell case, insofar as it held that assessments for special benefits were judgments of the circuit court upon which executions might issue under the charter of St. Louis at that time in force and effect, was expressly overruled by this court in the Brinckwirth case, supra. It is evident that the charter under review in the Eyssell case contained no provision fixing the duration of the liens of special benefit assessments, unlike the existing St. Louis Charter, which definitely fixes the duration of such liens at ten years from

the entry of judgment. The charter under review in the Eyssell case merely provided that the benefit assessments "shall be a lien on the property so charged" without attempting in any wise to fix the duration of such lien, and it might perhaps have been well and logically ruled in that case that, absent from the city charter any provision fixing the duration of the lien, the length and extent thereof was governed by the general statute fixing the length of the lien of general judgments at three years from their rendition. We do not regard the Eyssell case, however, as determinative of the point involved in the instant case now before us, and, in view of the radical difference between the present St. Louis Charter and the one under review in the Eyssell case, we deem that case distinguishable as to facts and effect from the case at bar.

Kansas City v. Field, 270 Mo. 500, involved the construction of the article of the Kansas City Charter of 1898 relating to park condemnations, which provided that the lien of assessments for special benefits "shall continue against each lot or parcel assessed until the assessment against such lot or parcel has been paid or collected in full, both principal and interest." It was there held by Division Two of this court that the quoted charter provision was not in harmony with Section 1341, Revised Statutes 1919 (Sec. 1912, R. S. 1909), which provides: "Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof . . . and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or. process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever." But in rightly ruling the point there involved, FARIS, J., the learned writer of that opinion, significant-

ly remarked: "Granting for argument's sake the point which *we do not meet here, and do not decide,* that a necessity, rationally explainable, exists for the continuance of a lien beyond the general statutory limit, no reason can be seen for delaying the issuance of an execution for more than ten years."

Another phase of the same litigation was later before Division One of this court in the recent case of Kansas City v. Field, 285 Mo. 253, where, after referring to Judge FARIS's opinion in Kansas City v. Field, 270 Mo. 500, GOODE, J., speaking for this Division, said: "The exact point in decision (in that case) was that the judgment was presumed to be paid after ten years and could not be enforced thereafter by an excution, the court having no occasion to decide whether there was a lien arising from the verdict of the jury which was independent of the judgment, and enforcible in equity . . . The Charter of Kansas City prevents an assessment lien, confirmed by a judgment, from expiring in three years, as the lien of an ordinary judgment does unless revived. [R. S. 1909, sec. 2125; R. S. 1919, sec. 1556.] *Usually the assessment lien will continue until the assessment is paid in full,* but will not continue so as to be enforced if the holder permits the judgment to remain unexecuted and with nothing paid on it for ten years, any more than a judgment for a debt will be collectible by execution after ten years' default, though in fact the debt remains unpaid." (Italics ours.)

We see no lack of harmony between Section 8, Article XXI, of the St. Louis Charter of 1914, and Section 1556, Revised Statutes 1919. Section 1556 of the general statutes must be read and considered *in pari materia* with the immediately preceding Section 1555, providing that "judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held." It is evident that the purpose of Section 1555 was to make judgments *in personam* a lien on the real estate of the judgment debtor

and Section 1556 fixes the duration of such lien at three years from the entry of such judgments. The general statutes are silent, so far as we can find, with respect to the duration of the lien of judgments for special benefits. Judgments in proceedings for the collection of local assessments and special benefits are judgments *in rem,* not *in personam,* and can only be for the enforcing of the lien against the particular property assessed. [Barber Asphalt Pav. Co. v. St. Joseph, 183 Mo. 451, and cases there collated.] Inasmuch as the General Assembly has not seen fit to pass any general law affecting or fixing the duration of the lien of benefit assessments, we see no reason why a municipality operating under special charter, such as the city of St. Louis, cannot fix the duration of such lien at ten years from the entry of the judgment of confirmation. Nor is there any lack of harmony with Section 53, paragraph 17, Article IV of the State Constitution which inhibits the General Assembly from passing any local or special law relating to the enforcement of judgments. That constitutional inhibition does not relate to *liens,* whether of benefit assessments or otherwise, but relates only to the enforcement of *judgments.* Under the general statutes, a *judgment* may be enforced and executions may issue thereon at any time within ten years after the rendition of such judgment. [Section 1564, R. S. 1919.] Section 8, Article XXI of the St. Louis Charter limits the duration of the lien of a judgment for benefits to the ten-year period prescribed by general law for the enforcement of judgments by execution. Hence, there is no inconsistency or lack of harmony here.

Section 15, Article XXI, of the St. Louis Charter of 1914, provides that ordinances condemning property for certain vast improvements, such as markets, public squares, public parks, and other like improvements, may provide for payment of the special benefit assessments in either one installment or in equal annual installments not to exceed seven in number, and that section furthermore provides that, for the purpose of anticipating the

collection of such judgments, the city may issue and sell local improvement bonds, for the payment of which, however, the city shall not be corporately liable, but which bonds shall be payable solely out of the collection of the particular judgments. It is evident that the charter framers recognized the fact that, in the condemnation of lands for improvements of a vast and expensive character, such as those designated in that section of the charter, there might be cast an intolerable burden upon the owners of lands assessed with benefits if the benefit assessments must be paid at one time and in one installment. So, in order to relieve the property owners in such cases from such burden, it was wisely provided that the benefit assessments might be made payable in any number of equal annual installments, not exceeding seven. If, as contended by plaintiff in error, the lien of such assessments expires in three years, unless revived by *scire facias,* then we would have the anomalous situation of the lien or security being wiped out entirely before the time had arrived for the payment of all the annual installments, if perchance the time for the payment of such installments be extended by ordinance for longer than three years. And again, the purchaser of local improvement bonds, supposedly secured by and payable solely out of the collection of such assessment judgments, would find that his security had become valueless after three years, when perchance there are from one to four annual installments as yet not due and payable. To our mind, to so hold would be not only inequitable but unreasonable, unless it clearly appears that the charter requirements are inharmonious with the Constitution and general laws of the State. It does not so appear.

It follows from what we have here said that, there being no lack of harmony between the section of the St. Louis Charter under review and the Constitution and general laws of this State, the petition of plaintiff in error fails to state facts sufficient to constitute a cause

of action against defendant. While the memorandum filed by the court *nisi* indicates that defendant's demurrer was not sustained for that reason, nevertheless the judgment *nisi* was general, sustaining the demurrer, entering final judgment for defendant upon the pleadings and discharging the defendant without day because of plaintiff's refusal to plead further.

The judgment *nisi* was right and the same is accordingly affirmed. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is hereby adopted as the opinion of the court. All of the judges concur, except *Woodson, J., dubitante.*